**Dwayne E. NANCE, Plaintiff-Appellee,**

and

**Fireman's Fund Insurance Company, Intervenor-Appellee,**

v.

**GULF OIL CORPORATION, Defendant-Appellant.**

No. 86–3122.

United States Court of Appeals, Fifth Circuit.

May 29, 1987.

Rehearings Denied July 8, 1987.

John O. Charrier, Jr., Thurl Stalnaker, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for defendant-appellant.

Walker P. MacMurdo, Cave & McKay, R.C. Edwins, Baton Rouge, La., for Nance.

David K. Persons, Hailey, McNamara, Hall, Larmann & Papale, Metairie, La., for Fireman's Fund Ins. Co.

Before VAN GRAAFEILAND *, HIGGINBOTHAM, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellant, Gulf Oil Corporation, appeals from an adverse jury verdict rendered as a result of a personal injury suit brought by Dwayne Nance. We reverse and remand.

In 1984 plaintiff Nance, an employee of Service Equipment & Engineering Company (SEE), tripped on a water hose and fell approximately 20 feet from the drill floor of SEE's rig through its open "V-door" to the top deck of an offshore drilling platform owned by Gulf Oil Corporation. Nance fractured his back and the heel of his left foot and filed suit against Gulf for negligence. Shortly before trial, Nance amended his complaint to include strict liability claims under the La.Civ.Code Ann. arts. 2317 and 2322 (West 1979).

Trial was to a jury which originally returned a verdict form containing inconsistent, irreconcilable answers to the special interrogatories. After revising the verdict form, the district court resubmitted it to the jury. On the second attempt, the jury found Gulf negligent and strictly liable, and judgment was awarded to Nance.

* Senior Judge of the Second Circuit, sitting by    designation.

## I.

In accordance with Rule 49(a) of the Federal Rules of Civil Procedure, the district court submitted this case to the jury upon written interrogatories. When the jury returned its verdict, the answers appeared inconsistent: the jury responded to questions 2, 5, and 7 that Gulf was neither negligent nor strictly liable. Mysteriously, in answer to question 11, which, according to the verdict form, the jury was required to answer regardless of the response to the preceding questions, the jury apportioned 95% of the fault to Gulf and the remaining 5% to Nance.

Asserting that the answers were reconcilable, Gulf moved the court to enter judgment in its favor. The court determined, however, that the answers to the interrogatories could not be fairly reconciled, denied Gulf's motion, and submitted to the jury a new verdict form which had been amended in accordance with Gulf's request.[1] The court explained to the jury that the answers on the previous form were inconsistent and a new, fresh verdict form was therefore being submitted for their additional consideration. Following further deliberations, the jury rendered a new verdict which found Gulf both negligent and strictly liable. Gulf was again assessed 95% of the fault and Nance was awarded $275,000 in damages.

Gulf argues on appeal that the answers on the original verdict form were clearly reconcilable, that Rule 49(a) precluded the court from submitting a revised verdict form, that the district court violated Gulf's seventh amendment right to a jury trial by resubmitting the verdict form, and that resubmission of the verdict form coerced the jury to rule against Gulf.

■ We endorse the district court's resolution of this problem. Gulf has never offered an interpretation that reconciles these answers, and our imagination does not stretch so far as to harmonize the findings that Gulf was neither negligent nor strictly liable with the finding rendered against Gulf on the issue of comparative fault. Because the answers in the first verdict were irreconcilable, there was no seventh amendment violation by the resubmission of the verdict form. The seventh amendment only requires a court to adopt a jury's verdict if the answers to the interrogatories in the verdict are consistent or if there is some view of the case which would make the jury's answers to the interrogatories consistent. *Perricone v. Kansas City Southern Ry. Co.*, 704 F.2d 1376, 1379 (5th Cir.1983) quoting *Griffin v. Matherne*, 471 F.2d 911, 915 (5th Cir.1973).

■ Gulf maintains that even if the jury's answers to the interrogatories were irreconcilable, the district court should have ordered a new trial rather than resubmit the verdict form since a Rule 49(a) verdict form cannot be resubmitted to the jury to resolve inconsistencies. Contrary to Gulf's assertions, Rule 49(a) does not prohibit resubmission of a 49(a) verdict form. "While Rule 49(a) unlike 49(b) does not provide for resubmission"[2] of a verdict form, Rule 49(a) certainly does not preclude resubmission. Furthermore, it has long been established in this Circuit that inconsistent special verdict answers may be resubmitted to a jury for clarification of the inconsistency.[3]

---

1. The amendments to the verdict clarified the route the jury should take if it answered the negligence and strict liability questions in Gulf's favor. For instance, if the jury had determined Gulf free from both negligence and strict liability, under the amended form, the jury was instructed to stop and proceed no further; thus, there would be no findings as to Gulf's share of fault or a determination of the damages suffered by Nance.

2. *Griffin v. Matherne*, 471 F.2d 911, 915 n. 6 (5th Cir.1973).

3. *Perricone v. Kansas City S. Ry. Co.*, 704 F.2d 1376, 1379 (5th Cir.1983); *Guidry v. Kem Mfg. Co.*, 604 F.2d 320, 321 (5th Cir.1979), *cert denied*, 445 U.S. 929, 100 S.Ct. 1318, 63 L.Ed.2d 763 (1980); *Fugitt v. Jones*, 549 F.2d 1001, 1005 (5th Cir.1977); *Morrison v. Frito-Lay, Inc.*, 546 F.2d 154, 160–61 & n. 10 (5th Cir.1977); *Landry v. Offshore Logistics, Inc.*, 544 F.2d 757, 761 (5th Cir.1977). See 5A J. Moore, *Moore's Fed.Prac.* ¶ 49.03 [4] (2d Ed.1985).

Gulf next argues that even if the court was entitled to resubmit the verdict form, it was not entitled to amend the form. The form was amended in accordance with Gulf's request. Gulf cannot reverse its position and cry "foul play" merely because the amendment failed to gain Gulf an advantage. Moreover, when this Court has approved resubmission of a verdict form, we have not distinguished situations in which an exact duplicate of the original verdict form was resubmitted from those in which the original form was amended.[4]

Finally, Gulf asserts that by resubmitting the verdict form, the district court coerced the jury to rule for Nance. This argument erroneously suggests that the jury truly found in favor of Gulf in its original answers. Notwithstanding this logical failing, the argument is unpersuasive because the district court carefully cautioned the jury that by resubmitting the verdict form he was not in any way suggesting what decision should be reached nor was he attempting to express favoritism toward one party or the other. We have previously held that the mere resubmission of a verdict form does not necessarily "coerce" a verdict.[5] There was, in sum, no error in the district court's resubmission of the verdict form.

## II.

Gulf next challenges the district court's decision allowing Nance, on the eve of trial, to amend his complaint by adding strict liability claims. Approximately one year elapsed between the time Nance filed suit against Gulf and the date of trial. Gulf first became aware of the strict liability claims one week before trial when Nance submitted his suggested jury charge including strict liability inquiries. This late claim provoked a pretrial conference five days before trial. The district court then waited until moments before the parties' opening statements to the jury before announcing his decision to permit amendment of Nance's complaint. Gulf immediately requested a continuance to address the new claim, but the motion was denied and trial began. The court, in addressing Gulf's complaints, expressly evaluated the new claims in terms of their impact on Gulf's legal posture and its ability to defend the case fairly.

Gulf charges that the district court abused its discretion in allowing this eleventh hour amendment. Beyond asserting that it was "hamstrung to meet the new claim", Gulf has completely failed to articulate the prejudice it faced as a result of this event. Had the strict liability claims required Gulf to adduce new defensive facts, to develop materially different defenses, to conduct more discovery, or call other witnesses, Gulf could assert objective prejudice. However, in Louisiana, the strict liability cause of action is an alternative theory of recovery which "except for the element of the defendant's scienter, is virtually the same as that for negligence." *Kent v. Gulf States Utilities Co.*, 418 So.2d 493, 498 (La.1982). Therefore, with respect to the strict liability claims, the only truly novel element introduced into the trial, besides additional jury instructions, appears to have been the fact that Nance was relieved from proving Gulf's knowledge of the risk involved. Consequently, we need not speculate as to what possible prejudice Gulf encountered when Gulf has done nothing more than allege in vague and conclusory terms the damage it suffered by introduction of a claim which presented no unforeseen issues.

Gulf argues, however, that it should not shoulder the burden of proving prejudice, since under the law of this Circuit, a movant must prove excusable neglect for a lengthy delay in filing a motion to amend. *Chitimacha Tribe of Louisiana v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1163 (5th Cir.1982), *cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983); *Daves v. Payless Cashways, Inc.*, 661 F.2d 1022, 1025 (5th Cir.1981); *Dussouy v. Gulf Coast*

**4.** *Supra,* note 2.

**5.** *Perricone v. Kansas City S. Ry. Co.,* 704 F.2d 1376, 1378 (5th Cir.1983); *Landry v. Offshore Logistics, Inc.,* 544 F.2d 757, 761 (5th Cir.1977).

*Investment Corp.,* 660 F.2d 594, 598 (5th Cir.1981). Here, Nance never offered any explanation for his tardiness and the court never demanded one. Nonetheless, shifting to a movant the burden of proving inexcusable neglect is inappropriate unless the "delay presents the possibility of serious prejudice to the opponent." *Dussouy,* 660 F.2d at 598 n. 2. Federal Rule 15(a) counsels a liberal amendment policy, which is limited by considerations of judicial economy and fairness to the nonmovant and which abhors bad faith or a dilatory motive. The sound discretion of the district court, amplified by an articulation of the factors on which its decision rests, will not lightly be disregarded in matters of amendments. Although Nance's amendment was filed exceedingly late, the district court examined the relevant considerations and found, on balance, no prejudice to Gulf. Our review indicates the same result. Hence, although eve-of-trial amendments are ordinarily disfavored, we find no abuse of discretion.

### III.

■ Despite a request by Gulf, the district court refused to include on the verdict form a question pertaining to the percentage of fault attributable to SEE, because SEE was not a party to the suit. By failing to include this question on the verdict form, Gulf argues, the district court misapplied the Louisiana comparative negligence statute, La.Civ.Code Ann. art. 2324, and thus misled the jury to Gulf's prejudice. *Campbell v. Otis Elevator Co.,* 808 F.2d 429, 431 (5th Cir.1987). An alleged error in the charge is reversible only if the charge, when viewed in its entirety, misstated the state substantive law and thereby prejudicially misled the jury.

Article 2324 of the Louisiana Civil Code provides:

Persons whose concurring fault has caused injury, death or loss to another are also answerable, in solido; provided, however, when the amount of recovery has been reduced in accordance with the preceding article [plaintiff's comparative negligence statute], a judgment debtor shall not be liable for more than the degree of his fault to a judgment creditor to whom a greater degree of negligence has been attributed, reserving to all parties their respective rights of indemnity and contribution.

According to Gulf, this statute endeavors to limit a defendant's liability to his discrete share of fault and was intended to prevent a defendant from being responsible for the fault of others, be they parties to a lawsuit or not. Gulf acknowledges that, as Nance's employer, SEE's payment of workmen's compensation insulates it from liability for damages *or contribution. Franklin v. Oilfield Heavy Haulers,* 478 So.2d 549 (La.App.3d Cir.1985). Gulf nevertheless deems SEE's percentage of fault important because of the likelihood that it would reduce the proportionate negligence to which Gulf is otherwise exposed. Under Louisiana Law, Gulf will not escape full liability for Nance's damages unless Gulf's share of fault is found to be less than the negligence attributable to Nance. La.Civ. Code Ann. arts. 2323 and 2324, (West Supp. 1987).

"With the adoption of comparative fault, (C.C. art. 2323, effective August 1, 1980), the fault or non-fault, and the percentage of fault attributable to each person whether party to the lawsuit or not, has become relevant in the determination of damages to which an injured plaintiff is entitled." *Lemire v. New Orleans Pub. Serv., Inc.,* 458 So.2d 1308, 1309, (La.1984) (footnote omitted); *see also, Savoie v. McCall's Boat Rentals, Inc.,* 491 So.2d 94, 105 (La.App.3d Cir.1986), writ denied, 494 So.2d 334 (La. 1986) and 494 So.2d 542 (La.1986), (trial court erred by failing to submit to the jury a requested special interrogatory inquiring into the fault of the plaintiff's employer). The Fifth Circuit in *Diggs v. Hood,* 772 F.2d 190, 194–95 (5th Cir.1985), explained the relevance of a determination of the fault of non-parties: "Under the earlier [Louisiana] rule, joint tortfeasors were each liable for their virile, that is per capita, share of the debt, but Civil Code article 2103 now provides, '[i]f the obligation arises from an offense or quasi-offense [a tort] it shall be divided in proportion to

each debtor's fault.'" The percentage of SEE's fault is therefore an issue material to apportioning the liability between Gulf and Nance, and the court should have included this issue either in its charge or the verdict form.[6]

Gulf never waived a determination as to SEE's percentage of fault. Indeed, it objected to the absence of such a question on the verdict form. By excluding a question on SEE's fault, the district court misapplied the Louisiana comparative fault laws.

The jurors likely felt compelled by the structure of the verdict form to allot 100% of the negligence between Nance and Gulf, the only parties there listed, even if they deemed SEE to be at least partially responsible for the accident. The court gave no curative instruction that permitted the jury to apportion less than 100% negligence between Nance and Gulf.[7] Although Gulf's counsel in his closing argument urged the jury to consider SEE's responsibility for the accident, the verdict form and charge offered no commonsense opportunity to make that distinction. Moreover, Nance's attorney emphasized the apparent "either/or" nature of the fault issue. The evidence presented at trial, however, implies that much of the fault for this accident could have been attributed to SEE. For example, for purposes of this drilling operation, only one Gulf employee remained aboard the rig and platform while SEE had approximately twenty-four employees. Although the lone Gulf employee had the ultimate responsibility and authority over the rig, a SEE employee left the water hose, which tripped Nance, unsecured on the deck of SEE's rig, and it was the failure to employ a chain across and install a railing on the V–door of SEE's rig which contributed to Nance's accident. We must conclude that the district court erred when it excluded from the verdict form a question inquiring into SEE's proportionate share of fault.

## IV.

■ At the time of trial, Nance had accumulated approximately $21,550 in medical bills. These medical expenses covered two separate hospitalizations and more than a year of treatment. Virtually no evidence was presented at trial with respect to Nance's estimated future medical expenses, however. Nonetheless, the jury awarded Nance $75,000 for medical expenses and we can only presume that the amount awarded over and above the $21,550, or $53,450, was to cover future medical bills. Gulf contends that Nance failed to present sufficient evidence to sustain the $53,450 figure for future medical expenses and we agree. Having already determined in section III, *supra,* that a new trial is required, we mention this issue for guidance of the parties on remand.

## V.

In the judgment entered by the district court, interest was awarded both to Nance and the intervenor, Fireman's Fund. Because Fireman's Fund's recovery would be taken from Nance's award, Gulf moved to amend the judgment to eliminate the possibility of an award of double interest. In spite of Fireman's agreement with Gulf, the district court refused to amend the judgment stating "[s]ince both parties are in agreement, the Court sees no need to modify the terms of the judgment." As pointed out by Gulf, no litigant should be "obliged by law to have its legal rights depend on the graciousness of a party op-

---

**6.** In *Lemire,* the Louisiana Supreme Court held that absent a waiver by all parties, pursuant to La.C.C.P. art. 1812, the court is *required* to submit to the jury written questions to determine the percentages of fault of all involved persons, even nonparties...." *Id.* at 1311 (emphasis added). While submission of jury issues in federal court is not controlled by state law, 9 C. Wright & A. Miller, *Federal Practice & Procedure* § 2502, at 487 (1971), the state supreme court's interpretation of its procedural rules empha-

sizes the importance the state attaches to allocating fault among all parties to a tortious incident.

**7.** The district court's charge instructed the jury "to tell us what percentage of negligence Mr. Nance's conduct caused to his own injuries and what percentage of negligence or fault Gulf Oil's conduct caused, because you remember we have to apportion that."

ponent." We therefore find that the judgment should have been amended.

REVERSED and REMANDED.