Anthony C. PRUDHOMME, et al., Plaintiffs–Appellees,

v.

TENNECO OIL CO., Defendant,

Booker Drilling Co., d/b/a Grace Offshore Co., Defendant–Appellant.

No. 91–4473

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

March 13, 1992.

Rehearing Denied April 13, 1992.

Charles W. Schmidt, III, Fred T. Hinrichs, Christovich & Kearney, New Orleans, La., for defendant-appellant.

J. Michael Stefanski, Edwards, Stefanski, Barousse, Cunningham, Stefanski & Zaunbrecher, Crowley, La., for plaintiffs-appellees.

Before JONES, DUHÉ and WIENER, Circuit Judges.

WIENER, Circuit Judge:

This appeal follows the bench trial of a suit in federal district court brought by Plaintiff–Appellee Anthony C. Prudhomme, and his wife, Henrietta G. Prudhomme, against Tenneco Oil Co. (Tenneco) and Booker Drilling Co. d/b/a Grace Offshore Co. (Booker), a drilling contractor. Prudhomme sought damages against Tenneco and Booker for back injuries he allegedly incurred in a slip-and-fall accident while working on a stationary drilling platform owned by Tenneco, located on the outer continental shelf in the Gulf of Mexico offshore Louisiana. Henrietta Prudhomme sought recovery against the same defendants for loss of consortium. Applying Louisiana law as mandated by the Outer Continental Shelf Lands Act,[1] the district court exonerated Booker of negligence but found it strictly liable for Prudhomme's back injury on the ground that his slip and

1. 43 U.S.C. § 1333(a)(2)(A).

fall was caused by hydraulic fluid that leaked onto the drilling rig's deck from a defective hose attached to equipment belonging to Booker.[2] On appeal, Booker argues that the district court erred in allowing the case to be tried on a theory of strict liability. And even if the strict liability theory was appropriate, Booker argues, the district court erred in finding that the Prudhommes proved that Booker's equipment was *defective*, and that this defect *caused* the accident. Agreeing with Booker that the district court abused its discretion in allowing the Prudhommes to proceed to trial on a theory of strict liability, we reverse that part of the judgment and affirm the rest, thereby pretermitting consideration of Booker's other assignments of error.

## I.

### FACTS AND PROCEEDINGS

On August 11, 1988, while performing services on Tenneco's platform for his employer, Western Atlas Offshore Co., an intervenor in this case, Mr. Prudhomme slipped and fell in hydraulic fluid on the deck and injured his back. In their original complaint, the Prudhommes brought suit against Tenneco for negligence and strict liability, and against Booker for negligence only.

On October 26, 1990, after the period for discovery had expired, Booker moved for summary judgment. In opposition to this motion, the Prudhommes filed a memorandum stating that, among other things, the source of the hydraulic fluid was a ruptured hose on Booker's equipment. Noting that the Prudhommes' response seemed to raise issues of strict liability not simply negligence, Booker pointed out in a supplemental memorandum that the Prudhommes had *never* alleged strict liability, and that new claims in strict liability could not defeat its motion for summary judgment. The district court rejected Booker's motion for summary judgment.

On December 21, 1991, shortly before the scheduled date for trial, the Prudhommes

filed a motion with the district court for permission to amend their original complaint in order to add a claim in strict liability against Booker. This motion was made *after* the expiration of the discovery period, *after* the pre-trial conference, *after* submission of the Joint Pre–Trial Stipulations, and *after* the case was set for trial. In a memorandum supporting this amendment, the Prudhommes acknowledged that, while they had always asserted a claim in strict liability against Tenneco, their prior allegations against Booker "did not mention specifically Louisiana Civil Code articles 2322 and 2317, or strict liability."

Booker immediately opposed the Prudhommes' motion to add a claim of strict liability, arguing that delay and prejudice would result from the need to re-open discovery, amend witness and exhibit lists, and prepare and file a new pre-trial stipulation. Booker also pointed out the potential difficulty of locating essential witnesses, records, and physical evidence. Booker noted that the Prudhommes had long been aware of the purported factual basis for a cause of action in strict liability, so amendment could not be justified on grounds of newly discovered facts.

Rather than contend with Booker's opposition at the risk of losing their scheduled trial date, the Prudhommes filed a motion on January 16, 1991 asking the district court to dismiss their second supplemental and amended complaint, which asserted strict liability. The district court complied, ordering that complaint dismissed.

Between the date of the district court's dismissal order (January 18, 1991) and the date of trial (April 3, 1991), the issue of Booker's strict liability was never again raised or mentioned in any pleadings or filings by the Prudhommes or by the court. Nevertheless, at pre-trial conference *on the morning of trial*, the district court announced, *sua sponte* it appears, that it would consider the Prudhommes' strict liability claim against Booker. Booker pro-

innocent of both negligence and strict liability.

tested, but the district court refused to relent. (The record and the briefs to this court do not say precisely what transpired during that pre-trial conference, except that the court advised Booker that while its objection would be noted, trial would commence that morning and would include consideration of Booker's strict liability.)

Immediately upon commencement of the trial, Booker objected once again to any consideration of a claim against it in strict liability, reiterating the foregoing sequence of events and stating that

> [w]e don't have an expert to prove there wasn't a defect. We assumed all along that this was a case solely on negligence.... We are prepared to try a case in negligence. We are not particularly prepared to try a case in strict liability,...."

The district court responded, "Your exception is noted, and it's overruled."

During the two-day trial, the Prudhommes adduced no evidence of a defect in the hydraulic hose beyond the bare fact that it developed a leak and spilled hydraulic fluid on the area of the metal deck where Mr. Prudhomme slipped and fell. Booker adduced testimony, on the other hand, that the hose had been inspected frequently and recently, was in good shape immediately prior to the leakage, and was re-used as soon as the broken segment was removed. Based solely on the fact that the hose broke, the district court found that the hose was defective, and that this defect caused the spilled fluid that, in turn, caused Mr. Prudhomme's accident. The district court found Booker strictly liable but not negligent. The court also assessed Mr. Prudhomme's fault at fifty percent, for failure to look where he was walking.

## II.

## ANALYSIS

### A. STANDARD OF REVIEW

We review the district court's decision to allow the trial to proceed, over Booker's objections, on the basis of strict liability for abuse of discretion.[3] That court's factual findings that the rupture of the hydraulic hose, in and of itself, proved its defectiveness and that the fluid leak caused the accident are reviewed for clear error.[4] Conclusions of law by the district court are subject to plenary review.[5]

### B. PROCEEDING TO TRIAL ON STRICT LIABILITY

The district court has broad discretion in the management of its docket and the trial of lawsuits pending before it—and appropriately so. In particular, the trial court's broad discretion in granting out-of-time motions to file supplemental and amended pleadings is so recognized as to require no citation. In fact, the appellate courts and the Federal Rules of Civil Procedure encourage liberality in granting such motions, as illustrated by Fed.R.Civ.P. 15 (Rule 15) and the notes of the Advisory Committee pertaining to it. But the issue of granting tardy motions to permit the filing of amendments to pleadings is not the real issue before us in this appeal. Rather, we consider a substantially different matter: whether here the district court abused its discretion when, on the very morning of trial, it permitted the claimant to seek recovery on the basis of strict liability even though, some three months before the trial, the district court itself had ordered the dismissal of the Prudhommes' motion to amend their complaint to add a cause of action in strict liability.

In their brief to this court, the Prudhommes treat the instant issue as a simple matter of the district court's discretion concerning the facts and theories reflected by pleadings and related filings. But none of the cases cited by the Prudhommes comprehends facts even closely approximating a situation in which a party, in moving to

---

**3.** *Jon–T Chemicals, Inc. v. Freeport Chem. Co.,* 704 F.2d 1412, 1417 (5th Cir.1983).

**4.** Fed.R.Civ.P. 52(a). *Halferty v. Pulse Drug Co., Inc.,* 864 F.2d 1185, 1188 (5th Cir.1989).

**5.** *Id.*

amend, states that a cause of action has not been asserted but should be, and then, in response to opposition, seeks and obtains a court order dismissing the very pleading in which assertion of that cause of action was sought.[6]

If the nature of this case were the same as those cited by the Prudhommes, in which the only issue is the district court's discretion in finding references in the complaint and other pleadings sufficient to put the defendant on notice for purposes of Fed.R.Civ.P. 8 (Rule 8), or the binding effect of pre-trial stipulations under Fed. R.Civ.P. 16 (Rule 16), the abuse of discretion standard might well interdict our reversal of the district court. Gossamer as is the thread of a strict liability claim against Booker in the fabric of this case, it might nevertheless have been sufficient to fall within the broad ambit of the district court's discretion.[7] But, as noted above, the procedural history of this case—the motion to amend, opposition, motion to withdraw, and district court's dismissal order—lifts this case out of the realm of the ordinary and distinguishes it from those cases relied upon by the Prudhommes.

In that regard, we are puzzled at the failure of both parties to discuss (or even to cite) our earlier opinion in *Nance v. Gulf Oil Corp.*,[8] a case that arose from very similar yet significantly distinguishable facts. In *Nance,* the plaintiff, who injured his back in a slip-and-fall accident on a drilling platform off the coast of Louisiana, for the first time mentioned the potential strict liability of Gulf in proposed jury charges submitted just a week before trial and over a year after filing his original complaint. Gulf convoked a pre-trial conference five days before trial, but the district court waited until moments before opening statements to advise the parties that Nance would be permitted to amend his complaint to include strict liability. Noting that "eve-of trial amendment are ordinarily disfavored,"[9] we nevertheless found no abuse of discretion by the district court.

Although there are obvious similarities between *Nance* and the instant case, *Nance* is noteworthy here more for the differences between it and this one. For example, we observed in *Nance* that "[t]he court, in addressing Gulf's complaints, expressly evaluated the new claims in terms of their impact on Gulf's legal posture and its ability to defend the case fairly."[10] We also noted in *Nance* that, "[b]eyond asserting that it was 'hamstrung to meet the new claim,' Gulf has completely failed to articulate the prejudice it faced as a result of

---

6. *E.g., Syrie v. Knoll International,* 748 F.2d 304 (5th Cir.1984); *In Re: Plywood Antitrust Litigation,* 655 F.2d 627 (5th Cir.1981); and *Hodges v. U.S.,* 597 F.2d 1014 (5th Cir.1979).

7. Despite the contrary allegation in their motion to file a second supplemental and amending complaint, the Prudhommes assert in their brief to this court that the Pre–Trial Order "clearly sets forth the theories of liability against both Booker and Tenneco under strict liability and negligence (see Pre–Trial Stipulation)." We have meticulously reviewed the Joint Pre–Trial Stipulations filed July 23, 1990 (five months *before* the filing of the Prudhommes' motion to file second supplemental and amending petition, in which they declared that the previous pleadings were devoid of allegations of strict liability as to Booker), but we failed to find that those stipulations "clearly" set forth the Prudhommes' expectation of pursuing a cause of action based on Booker's strict liability. In Section 7, "contested issues of law," the Prudhommes' stipulations cite only one issue contested by the Prudhommes, and even that one is expressed in the form of a cryptic and nonspecific question: "Are the defendants subject to strict liability under Louisiana law or [are] the defendants liable under general negligence." That expression does not even reflect to which of the defendants the Prudhommes have assigned strict liability, negligence, or both. Within Section 7, Tenneco's contested issues of law include negligence under La.Civ.Code art. 2315, and negligence under La.Civ.Code arts. 2317 or 2322. As to Booker, however, all specific contested issues of law refer to negligence only. While it is possible that Section 7, subsection f, could be read as implying something other than negligence when it refers to "[a]ll those issues of law implicit in the above statements of fact," such a stipulation does not constitute adequate notice within the contemplation of Rule 8.

8. 817 F.2d 1176 (5th Cir.1987).

9. *Id.* at 1180.

10. *Id.* at 1179.

this event."[11] Not so in this case; Booker explicitly articulated its prejudice to the district court and again in its brief to us. As Booker shows, it would have produced eyewitnesses for trial testimony, attempted to locate physical evidence, and retained expert witnesses on those aspects of strict liability not common to the issue of negligence if it had even a reasonable basis to expect to encounter strict liability at trial.

Similarly, our admonition that "Gulf has done nothing more than allege in vague and conclusory terms that damage it suffered by introduction of a claim which presented no unforeseen issues,"[12] does not apply in this case. Booker supported its assertions of prejudice with facts and logic. And, even though one week before trial was indeed paltry notice to Gulf, it was light years ahead of no notice at all to Booker. But most importantly, Gulf had never been actively misled by the district court, while here Booker was misled by the court when it formally ordered the dismissal of the Prudhommes' proposed amendment that sought to add strict liability as an additional cause of action against Booker. In sum, in light of these significant points of distinction, we find *Nance* too distinguishable to control.

We are also mindful of a line of Fifth Circuit jurisprudence in which the advance notice requirement of Fed.R.Civ.P. 56 (Rule 56) is construed under circumstances closely analogous to those under Rule 15 here. The common thread in the Rule 56 jurisprudence is the act of the district court in granting a motion for summary judgment months or even years after the non-moving party had been served with the motion. The trial court's grant of such motion usually came at a time when the parties were not expecting a summary judgment to

be rendered. Those cases involve such similar fact patterns as a summary judgment rendered prior to completion of discovery, or during a continuance for further discovery, or simply when nothing else has been going on—and always when no formal ten-days' notice had been issued by the court to alert the litigants that the court has under advisement the issuance of a summary judgment. Some of our cases have found an abuse of discretion and reversed the district court[13]; others have not.[14]

Writing for this court in *Daniels v. Morris*,[15] Judge Rubin identified the principal distinguishing feature between those cases in which we reversed the district court and those in which we did not—court-induced prejudicial inaction. For example, the trial court in *Capital Films Corp. v. Charles Fried Productions, Inc.*,[16] had already docketed the case for trial when, without notice, it granted summary judgment. At one point that court had even stated that it was not going to rule on the motion for summary judgment. There we found that the parties were "induced [by the trial court] to believe the case was going to trial."[17] As Judge Rubin observed in *Daniels*, the other line of cases, possibly best illustrated by *Hamman v. Southwestern Gas Pipeline, Inc.*,[18] involve no indication that the trial court had misled the parties or lulled them into believing that the case would be tried rather than be disposed of by summary judgment. Commenting on the distinction in the divergent lines of cases, Judge Rubin wrote:

> The district court here never induced the parties to believe it would not rule on the motion for summary judgment. The summary judgment issues in this case

11. *Id.*

12. *Id.*

13. *See Capital Films Corp. v. Charles Fries Productions, Inc.*, 628 F.2d 387, 391–92 (5th Cir. 1980); *Kibort v. Hampton*, 538 F.2d 90, 91 (5th Cir.1976); and *Enochs v. Sisson*, 301 F.2d 125, 126 (5th Cir.1962).

14. *See Landry v. Air Line Pilots Assn. Int'l*, 901 F.2d 404, 434–36 (5th Cir.1990); *Daniels v. Mor-*

*ris*, 746 F.2d 271, 274–76 (5th Cir.1984); and *Hamman v. Southwestern Gas Pipeline, Inc.*, 721 F.2d 140, 143–44 (5th Cir.1983).

15. 746 F.2d at 274–76.

16. 628 F.2d at 391.

17. *Id.*

18. 721 F.2d at 143–44.

remained at the forefront of the litigation. The parties continued to address it, albeit in fairly leisurely fashion. When, as here, the parties have been given ample opportunity to respond to the motion for summary judgment, the district judge may rule on it even after a significant delay, without giving the parties advance notice of the court's intention to consider and decide the motion on a "date certain." [19]

Even though the case *sub judice* involves no rule of statutory notice akin to Rule 56, the parallelism with the summary judgment cases is obvious. The question present in the instant case but absent from those cited for support by the Prudhommes is whether some action of the district court misled the aggrieved party or lulled it into inaction to its prejudice. We conclude that here the district court did so, albeit benignly and unintentionally, and thereby abused its discretion.

Despite our hindsight ability, and that of the district court, to discern from the extensive pre-trial record in this case an occasional tidbit that might be stretched to imply the lurking existence of a rudimentary claim in strict liability against Booker, the reading of that record as a whole eschews such a conclusion. With the exception of the self-correcting interlude in December of 1990 and January of 1991, involving the second supplemental and amending petition, a view of the record as a whole, from the filing of the original complaint to the day of trial, reveals plaintiffs who consistently assert two causes of action—negligence and strict liability—against Tenneco but only one cause of action—negligence—against Booker. That dichotomy is a brooding omnipresence throughout the entire procedural history of this case. It was confirmed by the Prudhommes when belatedly they recognized a need to add a strict liability cause of action against Booker. If, instead of capitulating, the Prudhommes had successfully fought Booker's opposition and persuaded the district court in its discretion to allow the late amendment and add the second cause of

action, we may well have affirmed. But when the Prudhommes elected instead to knuckle under, filing a formal motion to withdraw that complaint, they removed any lingering doubt as to their intentions: They would pursue Booker in negligence only, just as they had from the outset.

Even so, if the interlude had ended at that point, our analogy to the summary judgment cases mentioned above might not pertain. For it was only when the district court stepped in on January 18th, signing and filing its order to dismiss the complaint in which the Prudhommes for the first time sought recovery against Booker in strict liability, that the analogy ripened to full fruition. The same can be said for the distinction between this case and *Nance*. That overt act by the district court is the linchpin of this case. It is inextricably intertwined with the issue of Booker's strict liability, requiring us to determine whether the district court misled Booker and induced prejudicial inaction. We find that it did.

In the absence of any appropriate action by the Prudhommes or the district court, or both—subsequent to the court's order of dismissal but a reasonable time before the trial—sufficient to conjure up the specter of a strict liability cause of action against Booker, not even the most cautious of defense counsel could reasonably have been expected to be prepared to defend against strict liability when this case went to trial. Requiring counsel to do so under the instant circumstances was fundamentally unfair and unreasonable, the very stuff of which abuse of discretion is made.

That the manner in which Booker was misled rose to the level of prejudice is clear beyond peradventure. As counsel for Booker urged the district court, both in chambers and in open court at the outset of trial, the defense was lulled into preparing to defend against Booker's alleged negligence only. Understandably, Booker made no efforts to conduct discovery or otherwise obtain expert testimony, eyewitness testimony, or physical evidence relevant to

**19.** 746 F.2d at 275–76.

the issue of strict liability. The record and the briefs are silent as to whether, in the meeting in chambers immediately before trial commenced, counsel for Booker moved for a continuance, and no such motion appears in the trial transcript. But inasmuch as the district court had, *sua sponte*, sprung strict liability on counsel for Booker only moments before the trial, such a motion would clearly have been a vain and useless gesture; only the district court could cure such prejudicial abuse of discretion by postponing the trial, likewise *sua sponte*, and that it did not do.

Therefore, we find that when, under the circumstances of this case, the district court granted the Prudhommes' motion and ordered their strict liability pleadings dismissed, it unquestionably led Booker to believe that no such cause of action would be encountered at the trial. In so doing, the district court induced Booker, to its prejudice, to refrain from preparing to defend such a cause of action. We also find that such inducement was detrimentally relied upon by Booker.[20]

## C. THE MERITS

At the bench trial, the district court found that Tenneco was not responsible to the Prudhommes in either negligence or strict liability. The Prudhommes did not appeal that result. The court also found that Booker was free of any negligence whatsoever, and the Prudhommes did not appeal that result either. In holding Booker strictly liable to the Prudhommes, the district court made only two findings: that the hydraulic hose connected to Booker's equipment ruptured, causing hydraulic fluid to drip onto the deck where Prudhomme was working and where he stepped when he slipped and fell; and that the presence of the hydraulic fluid on the metal deck was a fifty percent contributing cause of the accident. Having found that the district court abused its discretion in permitting the trial to comprehend the issue of Booker's strict liability, we need not and therefore do not address the propriety of that court's ruling on the merits.

## III.

## CONCLUSION

Coupled with the Prudhommes' lack of success in all claims against Tenneco and the failure of the Prudhommes' negligence claims against Booker, our reversal of the district court's judgment against Booker on grounds of strict liability means that the Prudhommes take nothing. For the reasons set forth above we VACATE the judgment of the district court to the extent it held Booker liable to the Prudhommes in strict liability, but we AFFIRM that judgment in all other respects; and we RENDER judgment in favor of Booker and against the Prudhommes, dismissing their lawsuit with prejudice.

VACATED in part, AFFIRMED in part, AND RENDERED.

**20.** Booker makes the conclusory statement, in its primary brief and again in its reply brief, that the Prudhommes "waived" their right to assert strict liability against Booker when they moved for and obtained a court order dismissing their motion for permission to file a second supplemental and amending complaint. Albeit unartfully, and without citation to authority, Booker appears to be suggesting that the Louisiana concept of estoppel by record, also known as judicial estoppel (as distinguished from estoppel by judgment), would preclude the Prudhommes from prosecuting a cause of action in strict liability against Booker. Broadly, Louisiana recognizes three types of estoppel: equitable estoppel, estoppel by deed, and estoppel by record. *See Otto v. Cities Service Co.,* 415 F.Supp. 837 (W.D.La.1976). Estoppel by record may occur when a party files pleadings that are detrimentally relied on by an adverse party. *See Humble Oil & Refining Co. v. Boudoin,* 154 So.2d 239 (La.App. 3d Cir.1963). Had Booker pursued and developed such a theory on appeal, we might have been constrained under the doctrine of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to consider Louisiana's estoppel by record at least as an alternate basis for deciding this case. *See Stevens v. New Orleans & Northeastern Railroad Co.,* 341 F.Supp. 497 (E.D.La.1972).