**Dermot Patrick CARROLL, Plaintiff,**

v.

**Leonard C. JAQUES and the Jaques Admiralty Law Firm, P.C., Defendants.**

No. 1:95 CV 87.

United States District Court, E.D. Texas, Beaumont Division.

May 21, 1996.

Joseph Charles Blanks, Law Offices of Joseph C. Blanks, Beaumont, TX, for Plaintiff.

Curry Lynn Cooksey of Orgain, Bell & Tucker, Beaumont, TX, Richard N. Moore, Diane M. Guariglia, David Owen Cluck, of Lorance & Thompson PC, Houston, TX, for Defendants.

*MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, MOTION FOR NEW TRIAL, AND MOTION TO ALTER OR AMEND THE JUDGMENT*

SCHELL, Chief Judge.

Before this court are Defendants' Renewed Motion for Judgment as a Matter of Law, Motion for New Trial, and Motion to Alter or Amend the Judgment. Plaintiff filed a response. Defendants thereafter filed a Reply and Supplemental Brief in Support of their motions. Plaintiff then filed another response. Upon consideration of the motions, responses, and memoranda of law, this court is of the opinion that Defendants' motions should be DENIED.

## I. BACKGROUND

On October 5, 1994, Plaintiff, Dermot Patrick Carroll ("Carroll"), filed this action in the 172nd Judicial District Court of Jefferson County, Texas. Carroll alleged that Defen-

dants, Leonard C. Jaques and The Jaques Admiralty Law Firm, P.C. (collectively "Jaques" unless otherwise indicated), committed malpractice under the theories of negligence, gross negligence, fraud, breach of contract, and deceptive trade practices. On February 17, 1995, Defendants removed the action to this court.

On September 15, 1995, this court dismissed Carroll's legal malpractice claims and Texas Deceptive Trade Practices Act claim because those claims were barred by the statute of limitations. Carroll's breach of contract claims also were dismissed on limitations grounds because "attorney malpractice claims sound in tort regardless of whether they are framed as tort or contract actions." *American Medical Elecs. v. Korn,* 819 S.W.2d 573, 576 (Tex.App.—Dallas 1991, writ denied) (relying on *Willis v. Maverick,* 760 S.W.2d 642, 644 (Tex.1988)). Only Carroll's fraud claim remained in this action.

 On February 5, 1996, Defendants filed a Motion to Dismiss for Improper Choice of Law; and subsequently, on February 7, 1996, Defendants filed their Rule 12(b)(6) Motion to Dismiss Claims Under Michigan Law. In these motions, Defendants argued that the laws of Michigan should apply, and that Carroll's exclusive remedy is a malpractice action, which is barred under a Michigan two-year statute of limitations. Defs.' Br. in Supp. of Mot. to Dismiss at 6. The threshold issue for determination was whether Defendants had shown a true conflict between the laws of Texas (the forum) and Michigan (the foreign state). On February 8, 1996, the court initially determined that Defendants had not carried this burden and that the laws of Texas would apply. But, upon an oral motion, the Defendants later carried their burden of showing that a true conflict of laws existed between the laws of Texas and Michigan with respect to punitive damages. Unlike Texas law, Michigan law does not permit recovery of punitive damages, but only "exemplary" damages to compensate a plaintiff. Thus, on February 9, 1996, the court ruled that the laws of Michigan would govern this action. Tr. of Hr'g on Pretrial Mots. at 17. Although the laws of Michigan would govern

the substantive issues, the court applied Texas statute of limitations. Under the Texas choice-of-law rules by which this court is bound, the general rule is that a Texas court (or a federal court sitting in Texas) will apply its own statute of limitations even though it must apply the substantive law of a foreign state. *Ellis v. Great Southwestern Corp.,* 646 F.2d 1099, 1111 (5th Cir.1981).

On February 12, 1996, this court empaneled a jury in this diversity action. On February 20, 1996, this action came on for trial before a jury. On February 27, 1996, the jury returned a verdict finding that Leonard C. Jaques and The Jaques Admiralty Law Firm, P.C. committed fraud upon Dermot Carroll. The jury awarded Carroll damages in the amount of $5,000,000 ($1,500,000 in actual damages and $3,500,000 in exemplary damages). On March 4, 1996, a judgment in the amount of $5,563,545.51 (including prejudgment interest) was entered against the Defendants.

## II. DISCUSSION

### A. Motion for Judgment as a Matter of Law

#### 1. Standard

 Rule 50 of the Federal Rules of Civil Procedure sets forth the standard for judgment as a matter of law:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

FED.R.CIV.P. 50(a)(1). A motion for judgment as a matter of law raises the same issues as a motion for summary judgment. "'The primary difference between the two motions is procedural'.... In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986) (quoting in part *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 745 n. 11, 103 S.Ct. 2161, 2171 n. 11, 76 L.Ed.2d 277 (1983)).

▮ A motion for judgment as a matter of law should be granted "[i]f the facts and inferences point so strongly and overwhelmingly in favor of the moving party that the reviewing court believes that reasonable jurors could not have arrived at a contrary verdict...." *Resolution Trust Corp. v. Cramer,* 6 F.3d 1102, 1109 (5th Cir.1993). In ruling on a motion for judgment as a matter of law, "a court must examine the entire record in the light most favorable to the nonmovant and draw all inferences in that party's favor." *Becker v. PaineWebber, Inc.,* 962 F.2d 524, 526 (5th Cir.1992). A court may not weigh the evidence, pass on the credibility of witnesses, or substitute its judgment of facts for that of the jury. *Johnson v. Bekins Van Lines Co.,* 808 F.Supp. 545, 547 (E.D.Tex.1992), *aff'd,* 995 F.2d 221, *cert. denied,* 510 U.S. 977, 114 S.Ct. 471, 126 L.Ed.2d 422 (1993). The court now turns to Defendants' specific arguments raised in their renewed motion for judgment as a matter of law.

### 2. Sufficiency of the Evidence for Submission to the Jury

▮ The jury found by a standard of clear and convincing evidence that Leonard C. Jaques and The Jaques Admiralty Law Firm, P.C. committed fraud upon Dermot P. Carroll. Defendants argue that the findings of fraud should be set aside because there is no evidence that the Defendants made an actionable misrepresentation. Defs.' Renewed Mot. for J. as a Matter of Law at 1–2. After a review of the trial record and the parties' briefing, however, the court determines that there is a legally sufficient evidentiary basis for a reasonable jury to make findings of fraud in this case as to both Defendants.

Defendants argue that "Plaintiff's claims do not sound in fraud, but are allegations of professional negligence." Defs.' Renewed Mot. for J. as a Matter of Law at 2. In addressing whether fraud is an action independent of a malpractice action, however, the Michigan Court of Appeals has determined:

> [W]e conclude that the interest involved in a claim for damages arising out of a fraudulent misrepresentation differs from the interest involved in a case alleging that a professional breached the applicable standard of care. *Simply put, fraud is distinct from malpractice.*
>
> Fraud is no less actionable because it is committed by an attorney with whom the plaintiff has an attorney-client relationship. If a client attempts to characterize a malpractice claim as a fraud or other type of claim, a court will look through the labels placed on the claim and will make its determination on the basis of the substance and not the form. However, when a complaint alleges not only malpractice but also all the necessary elements of fraud, the statute of limitations governing fraud actions will apply to the fraud count and, if such count is not barred, the plaintiff may proceed on that court [sic] to collect damages proximately caused by the alleged fraud. An attorney's advice or opinion, if knowingly false, may constitute fraud.

*Brownell v. Garber,* 199 Mich.App. 519, 503 N.W.2d 81, 87 (1993) (citations omitted) (emphasis added). Because Carroll pleaded a fraud claim independent of his malpractice claims, there is no possibility that his fraud claim is subsumed in his malpractice claims.

Plaintiff introduced legally sufficient evidence for a reasonable jury to find that Leonard C. Jaques and The Jaques Admiralty Law Firm, P.C. committed fraud. The Plaintiff introduced evidence of several instances of fraud, but for the sake of brevity the court will reference only one. On November 9, 1984, a lawyer in The Jaques Admiralty Law Firm, P.C. sent a letter to Plaintiff that contained statements indicating that the Jaques firm continued to represent the Plaintiff. Pl.'s Ex. 841109. There was evidence at trial that the statements in the November 1984 letter were false. Although not appearing for any portion of the trial, Leonard Jaques repeatedly testified through video deposition that his firm ceased representing Plaintiff on April 5, 1984, the date of the Fifth Circuit's decision affirming Judge

Parker's dismissal. Trial Tr. at 235–36. Among the evidence that connects Leonard Jaques personally to this fraud is his testimony (1) that he personally worked on Carroll's case (Trial Tr. at 234–35), (2) that he "caused" the November letter to be sent to Carroll, and (3) that it was his "policy" to send such a letter. Trial Tr. at 280. The foregoing evidence, along with evidence on the other elements of fraud, was legally sufficient for a reasonable jury to find that Leonard C. Jaques and The Jaques Admiralty Law Firm, P.C. committed fraud upon the Plaintiff.

3. Finding of Fraud as to Leonard C. Jaques

■ Initially, the jury returned a verdict with inconsistent answers on whether Leonard C. Jaques committed fraud. Specifically, the jury answered Question No. 1, part a., "No" with respect to Leonard C. Jaques, finding that Jaques did not commit fraud. But, in Question No. 4, part a., the jury answered "Yes" that Leonard C. Jaques's fraudulent conduct inflicted Carroll with humiliation, sense of outrage, and indignity. The court then gave an additional instruction to the jury to reconcile these two answers. After further deliberation, the jury then reconciled the two answers by answering Question No. 1, part a, in the affirmative and finding that Leonard C. Jaques committed fraud upon Carroll.

Defendants now argue: "The jury's initial answers to Questions No. 1 and 4 were not fatally inconsistent, and the charge should not have been resubmitted for the jury to reconsider. Because the answers to the two questions can be harmonized, the judgment should be based on the controlling question, Question No. 1, in which the jury found that Leonard Jaques had not committed fraud." Defs.' Renewed Mot. for J. as a Matter of Law at 2.

■ "The seventh amendment only requires a court to adopt a jury's verdict if the answers to the interrogatories in the verdict are consistent or if there is some view of the case which would make the jury's answers to the interrogatories consistent." *Nance v. Gulf Oil Corp.*, 817 F.2d 1176, 1178 (5th Cir.1987). District courts have wide discretion in deciding whether the jury's answers to the court's questions are clear. *Richard v. Firestone Tire & Rubber Co.*, 853 F.2d 1258, 1260 (5th Cir.1988), *cert. denied*, 488 U.S. 1042, 109 S.Ct. 868, 102 L.Ed.2d 992 (1989). The Fifth Circuit has explained this wide discretion:

> The district judge, who has observed the jury during the trial, prepared the questions and explained them to the jury, is in the best position to determine whether the answers reflect confusion or uncertainty. The judge also is in an excellent position to evaluate whether the jury will likely be able to resolve this uncertainty with proper guidance.... Removing any uncertainty in the jury's findings obviously solidifies any judgment entered on the verdict and reduces the prospect of the dreaded retrial.

*Richard*, 853 F.2d at 1260 (citations omitted). Mere resubmission does not necessarily coerce a verdict. *Nance*, 817 F.2d at 1179. Despite Defendants' argument to the contrary, "it has long been established in this Circuit that inconsistent special verdict answers may be resubmitted to a jury for clarification of the inconsistency." *Id.* at 1178.

After reviewing Defendants' briefing and the applicable law, the court remains convinced that the jury's initial findings in this case were inconsistent. Notably, counsel for the Defendants took this position as well at the trial when referring to the initial verdict as a "conflict verdict." Trial Tr. at 1080. The jury's initial finding that Leonard C. Jaques did not commit fraud was inconsistent with the jury's other finding that Leonard C. Jaques's "fraudulent conduct inflicted Carroll with humiliation, a sense of outrage, and indignity." Finding no way to reconcile the conflicting findings, the court gave the jury an additional instruction under Rule 49. The court's additional instruction explained the conflict and clarified the relationship between Questions No. 1 and No. 4. The court intended that the additional instruction would clear up any confusion or uncertainty, and that the additional instruction would give the jury proper guidance on the law. According-

ly, the court determines that resubmission to the jury was proper.

### 4. Exemplary Damages

■ The court instructed the jury:

> If you find that the Defendants are liable for Carroll's damages, you must award Carroll the compensatory damages that he has proven. You also may award exemplary damages to further compensate Carroll for any humiliation, sense of outrage, and indignity resulting from injuries inflicted by Defendants' fraudulent conduct, if any.
>
> You may not award exemplary damages for the purpose of punishing the Defendants. Exemplary damages are awarded only to compensate Carroll.
>
> If you determine that the Defendants' conduct was fraudulent and that such conduct further inflicted Carroll with humiliation, sense of outrage, and indignity, you may exercise your discretion to award those exemplary damages to compensate Carroll for the humiliation, sense of outrage, and indignity he suffered. In making any award of exemplary damages, you should consider that the purpose behind exemplary damages is that the reprehensibility of the Defendants' conduct both intensifies the injury and justifies the award of exemplary damages as compensation for the harm done to Carroll's feelings.

Court's Instructions to the Jury at 8. Defendants argue: "The jury was not properly instructed on the requirements regarding the basis of exemplary damages under Michigan law. The jury instruction did not limit the jury's assessment of exemplary damages to malicious conduct, as required by Michigan law. Without a jury finding of malicious conduct, the award of exemplary damages cannot stand." Defs.' Renewed Mot. for J. as a Matter of Law at 2.

■ Under Michigan law, to support an award of exemplary damages, the defendant's "conduct must be malicious *or* so willful and wanton as to demonstrate a reckless disregard of plaintiff's rights." *Veselenak v. Smith*, 414 Mich. 567, 327 N.W.2d 261, 264 (1982) (emphasis added). "The theory supporting exemplary damages is that the *reprehensibility* of the defendant's conduct intensifies the injury and justifies the award of additional compensation for the harm to the plaintiff's feelings." *Green v. Evans*, 156 Mich.App. 145, 401 N.W.2d 250, 253 (1985) (citing *Kewin v. Massachusetts Mutual Life Ins. Co.*, 409 Mich. 401, 295 N.W.2d 50 (1980) (emphasis added). "As a practical matter, the conduct we [Michigan Supreme Court] have found sufficient to justify the award of exemplary damages has occurred in the context of the intentional torts, slander, libel, deceit [*i.e.*, fraud], seduction, and other intentional (but malicious) acts." *Veselenak*, 327 N.W.2d at 264; *see also Ledbetter v. Brown City Savs. Bank*, 141 Mich.App. 692, 368 N.W.2d 257, 262 (1985) (fraud is sufficient basis for award of exemplary damages).

The court properly instructed the jury on the predicate for an award of exemplary damages. The court's instructions were clear that the jury must determine that a Defendant's conduct was "fraudulent" and involved "reprehensibility" before it could award exemplary damages. Court's Instructions to the Jury at 8. The court's usage of "Defendants' fraudulent conduct" also was more helpful to the jury than a wordy reference to "malicious or so willful and wanton as to demonstrate a reckless disregard of plaintiff's rights." *Veselenak*, 327 N.W.2d at 264. The court's instruction was tantamount to an instruction that the jury must find "malicious or so willful and wanton as to demonstrate a reckless disregard of plaintiff's rights" before an award of exemplary damages could be made.

### 5. Statute of Limitations

■ The jury found that Carroll did *not* discover, or by the exercise of reasonable diligence should have discovered, more than four years before bringing this suit on October 5, 1994 that fraud had been committed against him. Defendants argue: "Under Texas law, the evidence established as a matter of law that the plaintiff knew of facts that put him on notice of facts giving rise to his cause of action long before October 1990." Defs.' Renewed Mot. for J. as a Matter of Law at 3.

Fraud actions are governed by a four-year statute of limitations. *Williams v. Khalaf,* 802 S.W.2d 651, 656–58 (Tex.1990). A fraud claim accrues on the discovery of the fraud or on such time as the fraud might reasonably have been discovered through the exercise of reasonable diligence. *McMeens v. Pease,* 878 S.W.2d 185, 188 (Tex.App.—Corpus Christi 1994, writ denied) (citing *Mooney v. Harlin,* 622 S.W.2d 83, 85 (Tex. 1981); *Ruebeck v. Hunt,* 176 S.W.2d 738, 739 (Tex.1943); *Quinn v. Press,* 135 Tex. 60, 140 S.W.2d 438, 440 (1940)). "Knowledge of facts which would have excited inquiry into the mind of a reasonably prudent person, which, if pursued by him with reasonable diligence, would lead to the discovery of the fraud, is equivalent to knowledge of the fraud as a matter of law." *McMeens,* 878 S.W.2d at 188.

Examining the trial record in the light most favorable to the Plaintiff and drawing all inferences in that party's favor, the court determines that a reasonable jury could find that the Plaintiff did not have "[k]nowledge of facts which would have excited inquiry into the mind of a reasonably prudent person...." *McMeens,* 878 S.W.2d at 188. In this court's Memorandum Opinion and Order dated September 15, 1995, this court determined that Carroll's fraud cause of action accrued at least as early as December 2, 1990 when Carroll completed the "Request for Investigation" form submitted to the Michigan Attorney Grievance Commission. This court, however, determined that the ABA's letter dated October 18, 1990 was not sufficient summary judgment evidence to establish that Carroll's fraud action accrued on September 5, 1990. Defs.' Ex. 65. This court reasoned that, although a reasonable inference from the ABA's letter would be that Carroll did discover the facts establishing the elements of a cause of action for fraud, the ABA's response did not directly establish this fact. In considering a motion for summary judgment, the court cannot draw inferences for the movant. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14. Ultimately, this court determined that, based on the summary judgment record at the time, Carroll's fraud claim was not time-barred because it was filed on October 5, 1994, less than four years after the cause of action accrued on December 2, 1990. Even considering the additional evidence in the trial record, the court remains convinced that there is no evidence that conclusively establishes as a matter of law that Carroll knew of facts, which if pursued by him, would have led to the discovery of fraud more than four years before October 5, 1994.

### B. Motion for New Trial

#### 1. Standard

Rule 59 of the Federal Rules of Civil Procedure provides that "[a] new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States...." FED.R.CIV.P. 59. A court may grant a losing party's motion for new trial if the jury's verdict is against the great weight of the evidence. *Conway v. Chemical Leaman Tank Lines, Inc.,* 610 F.2d 360, 363 (5th Cir.1980). "[N]ew trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." *Id.* "Factors militating against new trials in such cases are [1] simplicity of the issues, [2] the degree to which the evidence was in dispute, and [3] the absence of any pernicious or undesirable occurrence at trial." *Id.* "When all three factors are present, [the court's] deference to the jury is reinforced by our confidence in its ability to understand the issues, to evaluate credibility and sort through conflicting testimony, and to act reasonably and fairly in the absence of prejudicial influences." *Shows v. Jamison Bedding, Inc.,* 671 F.2d 927, 931 (5th Cir.1982). The mere fact that evidence is conflicting is not enough to set aside the verdict and order a new trial. *Dawson v. Wal–Mart Stores, Inc.,* 978 F.2d 205, 208 (5th Cir.1992). "Indeed the more sharply the evidence conflicts, the more reluctant the judge should be to substitute his judgment for that of the jury." 11 CHARLES A. WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE § 2806 (1995).

A trial court is not required to view the evidence in favor of the verdict winner but may weigh the evidence. *Shows,* 671 F.2d at 930. A verdict can be against the great weight of the evidence even if there is substantial evidence to support it. *Rousseau v. Teledyne Movible Offshore, Inc.,* 812 F.2d 971, 972 (5th Cir.), *cert. denied,* 484 U.S. 827, 108 S.Ct. 95, 98 L.Ed.2d 56 (1987). If a trial court determines that the jury verdict is against the great weight of the evidence, it may exercise its sound discretion and order a new trial. *Shows,* 671 F.2d at 930. The trial court's determination will not be disturbed by the appellate court unless the trial court abused its discretion. *Id.* The court now turns to Defendants' specific arguments raised in their motion for new trial.

### 2. Fraud; Statute of Limitations; Predicate Findings for Exemplary Damages

After reviewing the parties' respective briefs on Defendants' Motion for New Trial and after considering the evidence at trial, the court determines that the verdict was not against the great weight of the evidence. As noted before, the Plaintiff offered sufficient evidence to support submission to the jury. Each party to this action adduced significant evidence on their respective claims and defenses on the issues of fraud, statute of limitations, and damages. Moreover, none of the *Conway* factors suggests that this court should order a new trial. Although this fraud case involved complex factual issues as to which foreign jurisdiction Carroll would have filed his claim in, the parties' respective experts offered testimony that clarified and simplified the issues for the jury. The parties sharply disputed with conflicting evidence almost every substantive issue in this case. The trial was conducted with proper decorum, and there was no pernicious or undesirable occurrence. Accordingly, the jury's verdict is not against the great weight of the evidence.

### 3. Damages Awards

The jury awarded the Plaintiff $1.5 million in actual damages and $3.5 million in exemplary damages. The Defendants argue that these awards are excessive be-

cause: (1) the evidence is factually and legally insufficient to support the damage awards; (2) the actual damage award and the exemplary damage award may both include recoveries for mental anguish and emotional distress, which would constitute a double recovery for these types of damages; (3) the exemplary damage award is so harsh that it reflects an intent to punish the Defendants; and (4) the damage awards are so great that they reflect that the jury was influenced by improper passion or prejudice. Defs.' Renewed Mot. for J. as a Matter of Law at 4.

After reviewing the trial record, the court determines that there was sufficient evidence to support the awards of actual and exemplary damages. With respect to actual damages, the testimony of Plaintiff, his physician, and other experts established what damages Plaintiff could have recovered in his underlying injury case, which was not filed on account of the Defendants' fraud. With respect to exemplary damages, the Plaintiff testified how he felt about Jaques's fraudulent conduct:

I feel dumb, stupid, naive, very upset. I clearly placed a lot of trust in a man that wasn't worthy of it, and he let me down, and I feel very, very bitter about it.... He promised me right from the word go that they could do right by me, and they never at any time led me to believe that they wouldn't or they couldn't. Well, it's obvious what's happened now, isn't it? I've been strung up, led up the garden path. There were so many coverups that—Well, you can draw your own conclusions.

Trial Tr. at 526. This testimony along with other evidence at trial is sufficient for a reasonable jury to award exemplary damages.

Concerning Defendants' argument that Plaintiff received a double recovery for mental anguish and emotional distress, the court's instructions and verdict form submitted to the jury safeguarded against this possibility. For example, Questions No. 3 and No. 5 of the verdict form each instructed the jury to award damages under the proper categories—"compensatory" or "exempla-

ry"—and not to award any damages twice for the same injury. Plaintiff may have recovered two awards under what Defendants are calling roughly "mental anguish," but the two awards are for different injuries and different types of mental anguish. The first award, under compensatory damages, originates from an injury of pain and suffering from Plaintiff's back-injury claim in an underlying lawsuit that would have been filed but for the fraud of the Defendants. The second award, under exemplary damages, originates from the fraudulent conduct of the Defendants that inflicted the Plaintiff with humiliation, a sense of outrage, and indignity.

With respect to Defendants' argument that the damages in this case are punitive and the result of passion or prejudice, the court has reviewed the trial record and determines that the damage awards are not punitive but rather are consistent with the expert testimony and other evidence. The jury was clearly instructed that any damage awards in this action must be compensatory and not punitive. Defendants argue that the $3.5 million award of exemplary damages is unprecedented in Michigan, and that no reported awards in Michigan over the last five years exceeded $150,000. The court, however, finds that under the evidence in this case, the jury had the prerogative to find that an award of $3.5 million is commensurate with Carroll's injury of humiliation, a sense of outrage, and indignity inflicted by the Defendants' fraudulent conduct.

4. Instruction on Exemplary Damages; "Compromise Verdict"

The court has already addressed Defendants' arguments on these issues in ruling on Defendants' Renewed Motion for Judgment as a Matter of Law.

C. Motion to Alter or Amend the Judgment

After the parties briefed the issue, the court awarded $563,545.51 in pre-judgment interest under Michigan law. Defendants argue:

[T]he plaintiff is not entitled to prejudgment interest on any future damages. Michigan law bars the recovery of prejudgment interest on future damages. More-over, plaintiff failed to segregate past from future damages in his proof at trial, and the jury verdict does not distinguish past from future damages.... Any award of prejudgment interest would constitute a double recovery.

Defs.' Renewed Mot. for J. as a Matter of Law at 6.

As instructed, the jury did not award any future damages for the fraudulent conduct of Defendants. The court specifically instructed the jury: "If you find for the plaintiff, he is entitled to recover an amount that will fairly compensate him for any damages he has suffered to date." Court's Instructions to the Jury at 9. The jury may have awarded "future damages" for Carroll's underlying back-injury claim (which would have been filed but for Defendants' fraudulent conduct), but this award of "future damages" actually would have been made in the past. Plaintiff's economist testified to damages that Carroll would have received in the past, and those damages (which are now past) included "future damages." Plaintiff's expert discussed damage figures that were in 1984 dollars and not adjusted for inflation or put into present value for 1996. Trial Tr. at 688. The jury's awards of damages in this case were for past damages on account of Defendants' fraudulent conduct. Accordingly, the court did not award pre-judgment interest on future damages but only on past damages cause by the Defendants' fraud.

## III. CONCLUSION

Therefore, the court ORDERS that Defendants' Renewed Motion for Judgment as a Matter of Law, Motion for New Trial, and Motion to Alter or Amend the Judgment are hereby DENIED.