**In the Matter of Leonard C. JAQUES**

**No. 6:96–MC–160.**

United States District Court,
E.D. Texas,
Tyler Division.

Aug. 12, 1997.

Thomas Peter Roebuck, Jr. of Bush, Lewis & Roebuck, Beaumont, TX, for Plaintiff.

Joel Marc Androphy of Berg & Androphy, Houston, TX, George Michael Jamail of

Bernsen, Jamail & Goodson, LLP, Beaumont, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER SUSPENDING LEONARD C. JAQUES FROM THE BAR OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS

SCHELL, Chief Judge.

On July 9, 1996, the judges of the United States District Court for the Eastern District of Texas unanimously agreed to initiate disciplinary proceedings against LEONARD C. JAQUES and THE JAQUES ADMIRALTY LAW FIRM, P.C. ("Respondents") for violations of the Eastern District of Texas Local Court Rules ("Local Rules") 3(a) and 3(d)(1)(A–D).[1] On September 13, 1996, the court dismissed the law firm based on Respondents' representation that six of the ten attorneys in the law firm are not members of the Bar of the Eastern District of Texas. On November 12, 1996, the court held a show cause hearing to determine whether Respondent Leonard Jaques should be disciplined. After continuing the hearing until the resolution of Respondent's criminal assault trial in the Eastern District of Michigan, the court concluded the show cause hearing on July 30, 1997. Considering all the evidence of Respondent's conduct, briefing of counsel, and arguments at the show cause hearing, the court is of the opinion that Leonard C. Jaques should be SUSPENDED from practice in the Eastern District of Texas.[2] Respondent violated Local Rules by (1) assaulting a person, (2) verbally abusing a lawyer during a deposition and disrupting the deposition, and (3) committing fraud on a client.

---

1. Although the Eastern District renumbered Local Rule 3 as "Local Rule AT–2" on April 11, 1997, the court will continue to refer to Local Rule 3 for consistency.

2. The court also grants in part and denies in part Respondent's (1) Amended Motion to Dismiss or, Alternatively, the Judgment on the Pleadings and (2) Motion for Summary Judgment. The court grants Respondent's motions with respect to Counts 5 and 6 of the Second Amended Order to Show Cause. All other relief sought in the motions is denied. In determining the merits of this

proceeding, the court addresses some of the arguments raised in Respondent's motions. The court did not rule on these motions until after the show cause hearing because the special counsel did not have an opportunity to respond to the motions before the hearing. This court also did not have an opportunity to review the motions before the show cause hearing on November 12, 1996. The court did not receive the motion to dismiss until October 30th and the motion for summary judgment until November 4th.

## I. BACKGROUND

On February 4, 1981, Respondent became a member of the Eastern District's Bar. On August 6, 1996 and pursuant to Local Rule 3, Respondent was ordered to appear and show cause why discipline, up to and including disbarment from this District, should not be ordered against him for violations of Local Rule 3(d)(1)(A–D) and Texas Disciplinary Rules of Professional Conduct ("Texas Rules") 3.04(c)(5), 3.04(d), 5.01, 8.02(a), 8.04(a)(3), and others as incorporated in Local Rule 3(a).[3] Respondent was notified that he may be subject to discipline under the foregoing rules for past and continuous actions injurious to clients, attorneys, courts, and other participants in the legal system. The court notified Respondent that the following instances would be considered at the hearing:

(1) On June 13, 1996, the United States District Court for the Eastern District of Michigan sanctioned Jaques for physically assaulting opposing counsel in open court during a recess in a trial. *Cook v. American Steamship Co.*, No. 91–CV–72412–DT (E.D. Mich. June 13, 1996).

(2) On May 21, 1996, this court sanctioned Jaques for abusive and disruptive behavior during his deposition. *Carroll v. Jaques*, 926 F.Supp. 1282, 1284 (E.D.Tex.1996).

(3) On May 2, 1996, the United States District Court for the Eastern District of Pennsylvania administratively dismissed without prejudice approximately 18,000 maritime cases pending in MDL 875 because Jaques failed to comply with the pretrial orders of the court. *In re Asbestos Products Liability Litigation*, 1996 WL 239863 (E.D.Pa.1996).

(4) On March 4, 1996, a judgment was entered by this court against Jaques and his firm based on a jury finding that they committed fraud on a client. *Carroll v. Jaques*, 927 F.Supp. 216, 219 (E.D.Tex.1996).

(5) On January 6, 1995 ... the United States District Court for the Southern District of Texas dismissed one of Jaques's cases and ordered Jaques to pay attorney's fees for refusal to comply with discovery orders and "blatant forum shopping." *O'Neill v. AGWI Lines*, 74 F.3d 93, 95 (5th Cir.1996) (affirming sanctions under Rule 37(b)(2)).

(6) On May 6, 1985, the United States Court of Appeals for the Sixth Circuit affirmed a district court's decision to hold Jaques in civil contempt for violating an order to appear for trial and for lying to two federal judges regarding his whereabouts and reason for his failure to appear. *In re Jaques*, 761 F.2d 302, 304 (6th Cir.1985).

*See* Order to Show Cause of Aug. 6, 1996.

On August 28, 1996, Respondent filed: (1) Rule 12(e) Motion for More Definite Statement; (2) Motion for Recusal; (3) Rule 12(b) Motion to Dismiss Disciplinary Action Claims; and (4) Motion to Seal. In the Rule 12(e) Motion for More Definite Statement, Respondent argued that the show-cause order was vague and failed to specify how Respondent violated the Eastern District of Texas Local Court Rules and Texas Disciplinary Rules of Professional Conduct. Although the August 6, 1996 order to show cause gave clear notice to Respondent of the six incidents of conduct or behavior on which the court would focus at the show cause hearing, Respondent's motion requested the court to go further by referencing the rules governing a lawyer's conduct that may have been violated by Respondent. To assist Respondent in making the connection between the conduct listed in the show cause order and the rules that were potentially violated, the court ordered the special counsel to file

---

**3.** In accordance with the fourteen-day notice requirement of Local Rule 3(d)(2)(B), the court initially scheduled this show cause hearing for September 4, 1996. Under Local Rule 3(d)(2)(B), the court specially appointed Thomas P. Roebuck, Jr. to prosecute the charges in this matter. The court also ordered (1) that Respondents file a response to the charges listed in the order to show cause and (2) that Respondents and the special counsel file briefs on this matter concerning the applicable legal standards.

and serve upon Respondent an amended order to show cause. Order of Sept. 13, 1996.

On August 30, 1996, the court denied Respondent's Motion for Recusal and stayed the proceeding to permit Respondent to file a petition for writ of mandamus on the recusal issue. On or about September 11, 1996, Respondent filed his petition for writ of mandamus in the Fifth Circuit Court of Appeals. On September 16, 1996, the Fifth Circuit denied the petition for writ of mandamus. This court addresses some of the matters raised in Respondent's petition for writ of mandamus. In Respondent's petition for writ of mandamus, he argued that this court's handling of this proceeding violates 28 U.S.C. §§ 144, 455 (recusal statutes) and due process guarantees. Respondent further argued that Local Rule 3 is unconstitutional. Respondent characterized this disciplinary proceeding as an "inquisition."

The court steadfastly disagrees that this proceeding is an inquisition. Local Rule 3(d)(2)(A) provides: "When it is shown to a judge of this court that a member of this bar has engaged in conduct which might warrant disciplinary action, the judge receiving the information shall bring the matter to the attention of the full court as to whether disciplinary proceedings should be held." As the presiding judge at the trial of *Dermot Patrick Carroll v. Leonard C. Jaques and The Jaques Admiralty Law Firm, P.C.*, No. 1:95–CV–87 (E.D.Tex.), tried to a jury in February 1996, the court clearly became aware of such information contemplated by Local Rule 3 when the jury returned its verdict on February 27, 1996. The jury found by clear and convincing evidence that both Leonard C. Jaques and his firm had committed fraud on a client.

After entering a judgment on that verdict in March of 1996 and after issuing rulings on several post-trial motions, the court held a hearing on April 24, 1996 in connection with the *Carroll v. Jaques* case. At this hearing, the court gave Jaques the opportunity to show cause why he should not be sanctioned for abusive and disruptive behavior at his own deposition in the case. The court also gave Jaques the opportunity to present argument and evidence. On May 21, 1996, the

court entered an order imposing sanctions on Jaques for his deposition behavior. *Carroll v. Jaques*, 926 F.Supp. 1282, 1284 (E.D.Tex. 1996), *aff'd*, 110 F.3d 290 (5th Cir.1997).

Before making a final decision on whether to present this information to the full court of the Eastern District of Texas, the court instructed its staff to conduct computer-assisted legal research to determine whether the fraud verdict and Jaques's deposition behavior were out of the ordinary or out of character for Jaques. The computer search revealed a number of published opinions from other courts indicating other incidents of misconduct. In Respondent's petition for writ of mandamus and his motion for recusal, he suggests that this court has somehow acted improperly by conducting legal research that revealed published court opinions imposing sanctions on him for misconduct. On the contrary, this court should make an effort to determine whether any misconduct has occurred elsewhere before making a decision to initiate a disciplinary proceeding.

Before making a final decision on whether to present this matter to the full court, the presiding judge in the *Cook v. American Steamship* case pending in the United States District Court for the Eastern District of Michigan, contacted this court requesting copies of documents and orders in the public record in the *Carroll v. Jaques* case. Contrary to Respondent's assertions in his motion to recuse and first petition for writ of mandamus, there is absolutely nothing inappropriate about such a request or this court providing other courts with copies of documents from the court's files in *Carroll v. Jaques*. The court is always willing to assist other courts and will continue to do so.

With knowledge of (1) the fraud verdict in the *Carroll v. Jaques* case, (2) Jaques's misconduct at his deposition in that case, (3) the finding by the United States District Court for the Eastern District of Michigan that Jaques had assaulted opposing counsel in the courtroom, and (4) the other instances of Jaques's misconduct judicially determined by other courts in published opinions, this matter was presented to the full court of the Eastern District of Texas. At a regular judges meeting of the Eastern District of

Texas, the full court unanimously agreed to initiate this proceeding against Jaques and his firm. The firm was included because of the fraud finding against it.

Respondent's petition for writ of mandamus contains a number of assertions which are in some instances absolutely false and some of which require clarification. Some of the arguments in the mandamus petition reiterate arguments previously made in the motion for recusal, but the court will not address those arguments because they are resolved in the court's Order of August 30, 1996, denying the motion for recusal. The court clarifies for the record a few assertions made in the first petition for writ of mandamus.

First, in the court's opinion, there is no conflict in this court having heard the *Carroll v. Jaques* case and now presiding over this disciplinary proceeding. The *Carroll v. Jaques* case was tried to a jury. What this court learned about Jaques in that trial was obviously not from "extrajudicial sources." As a matter of fact, most of the discrete instances of conduct by Jaques have already been judicially determined by other courts.

Second, Respondent asserts that this court's sanction against him for his language and misbehavior at his deposition was imposed without an evidentiary hearing. Pet. for Writ of Mandamus in *In re The Jaques Admiralty Law Firm, P.C. and Leonard C. Jaques,* No. 96–40895 (5th Cir.1996) at 6 n. 4. Respondent's assertion is patently false. At the April 24, 1996 hearing, Jaques had the opportunity to present whatever evidence and argument he chose to. At this hearing, Jaques personally addressed the court and his counsel presented a letter from a physician. The court continually invited counsel representing Jaques at the hearing to present argument or evidence. Hr'g Tr. in *Carroll v. Jaques,* No. 1:95–CV–87 (E.D. Tex. April 24, 1996) at 5–6, 11, 20–21.[4]

Third, attorney Thomas Emery, who is the attorney found by the United States District Court for the Eastern District of Michigan to have been assaulted in the courtroom in Michigan by Jaques, called this court's staff and requested a copy of an order in the *Carroll v. Jaques* case. The court's staff requested a copy of one of the Eastern District of Michigan's orders from Emery. As a courtesy to any lawyer, this court will usually provide copies of orders and filings to lawyers if they are not too voluminous. This is perfectly appropriate. Emery is not a party to Jaques's disciplinary proceeding. If Emery had been called as a witness in this proceeding (which he was not), the court could have objectively judged his credibility, having never met or spoken to him.

Fourth, under Local Rule 3(d)(2)(B), the court chose the option of appointing special counsel to prosecute this matter by presenting argument and any evidence on the six judicially determined occurrences of Jaques's conduct listed in the show cause order. The court could have chosen to proceed without specially appointed counsel, but the court wanted a lawyer with some expertise in the Texas Rules. The court then appointed Thomas P. Roebuck.

Fifth, with or without special counsel, it is appropriate for the court (1) to choose the examples of apparent misconduct upon which it will focus at a show cause hearing and (2) to prepare and sign its own show cause order. There is no denial of due process with such a procedure for two reasons: (1) Jaques has an opportunity to appear and show cause why these instances of apparent misconduct do not violate the disciplinary rules or why discipline is inappropriate here or, if a violation has occurred, what level of discipline would be appropriate; (2) contrary to Jaques's assertions in his first petition for writ of mandamus that this disciplinary proceeding resembles an "inquisition" in which the judge personally makes unproven allegations against a lawyer and then sits in judgment of his own allegations, the court has not originated any of these charges in the Second Amended Order to Show Cause. This court has not conjured up "allegations" in the traditional sense of unadjudicated accusations. All six of these instances of conduct by Jaques (1) have already been adjudicated and

4. The court takes judicial notice under Fed. R. Evid 201 of court decisions and records refer-

enced in this order that are otherwise not included in the evidentiary record of this proceeding.

resolved by a court with jurisdiction over the matter and (2) were determined in several instances to constitute misconduct by Jaques.

Particularly, with respect to the six instances set forth in the Second Amended Order to Show cause: In Count 1, the allegations against Jaques that he physically assaulted another lawyer in open court were obviously made by Emery, the lawyer found to have been assaulted during a break in the trial of *Cook v. American Steamship Co.* in the Eastern District of Michigan. The findings were made by another judge. In Count 2, the allegations that Jaques used abusive language and disruptive behavior during his deposition in *Carroll v. Jaques* were obviously made by Joseph Blanks, the lawyer taking Jaques's deposition. The findings at the sanctions hearing were made by this court. In Count 3, the findings regarding Jaques's failure to comply with the pretrial orders in MDL 875 resulting in the dismissal of 18,000 maritime asbestos cases were made by the MDL transferee judge. In Count 4, the allegations that Jaques committed fraud upon his client, Dermot Patrick Carroll, were obviously made by Carroll in his lawsuit, not by this court. The jury made the findings of fraud by clear and convincing evidence in the trial of *Carroll v. Jaques*. In Count 5, the findings that Jaques refused to comply with discovery orders in *O'Neill v. AGWI Lines* were made by the presiding judge in that case. The allegations probably originated with Jaques's opposing counsel. In Count 6, the findings affirming a district court's decision to hold Jaques in contempt for violating an order to appear for trial and for lying to two federal judges regarding his whereabouts and reasons for failing to appear were made by clear and convincing evidence by the Sixth Circuit Court of Appeals. This court did not originate any of these allegations, and the court made the findings in one of the cited six episodes of Jaques's conduct. This disciplinary proceeding does not remotely resemble the characterization placed on it by Jaques's counsel as an "inquisition."

In Respondent's Rule 12(b) Motion to Dismiss Disciplinary Action Claims, he argued that (1) "[t]his Court lacks subject matter jurisdiction over conduct that has no effect within this Court's territorial jurisdiction" and that (2) "Respondents have not been properly served with process, in that the summons was merely mailed to respondents and has not been properly effected pursuant to Rule 4(c)(2)." Respondent's Mot. to Dismiss at 1. The court denied Respondent's motion:

The court determines that Jaques and his firm can be subject to discipline in the Eastern District for their actions, which may have occurred outside the District but, nonetheless, affect their ability to represent clients in the District. The Eastern District has a substantial interest in regulating the members of its bar even when the conduct subject to discipline occurs outside the District. When a member of a bar violates professional responsibilities, no district court should have to wait until that member steps back into the district and causes additional harm. To prevent future misconduct and harm, district courts have an obligation to discipline a member of its bar when the member violates the district's local rules, regardless of where those violations occurred. District courts regularly admit lawyers to practice before them on showings of professional character and good standing. If a member of the bar no longer has professional character or good standing to practice, a district court must discipline that member.

In this proceeding, two of the six charges relate to Jaques's conduct in the Eastern District—(1) abusive and disruptive behavior in a deposition and (2) a finding of fraud on a client whose case was filed by Jaques in the Eastern District. *See Koke v. Phillips Petroleum Co.,* 730 F.2d 211, 214 (5th Cir.1984). While the other four charges relate to actions outside the Eastern District, these actions by Jaques and his firm, which have been adjudicated by other courts and if found to be true by this court, may directly affect their professional character and ability to effectively represent clients in the Eastern District. According to the Clerk's computer records dating back to 1989, Jaques and his firm have filed twenty-one cases in the Eastern District of Texas. Nine of those cases are currently pending. Jaques's

membership in the Eastern District's bar and regular appearances here compel this District to take notice of possible violations of its local rules of professional conduct even though those violations may have occurred outside the District.

Jaques also argues that this court lacks jurisdiction to impose discipline for alleged conduct occurring outside the Eastern District because discipline by the Eastern District would interfere with other jurisdictions. Respondents' Br. on Legal Standards at 20. The court, however, determines that the Eastern District's proceedings do not interfere with other jurisdictions because these proceedings relate only to Jaques's membership in the Eastern District. The Eastern District has power to admit and discipline members of its bar independently of and separately from admission and disciplinary procedures of state courts and other federal courts. *See In re Abrams*, 521 F.2d 1094, 1101 (3d Cir.1975). Other district courts are free to make their own determination as to whether Jaques and his firm have violated local court rules. Likewise, the Michigan State Bar is free to make any independent determination whether Jaques is fit to practice law. The fact that other district courts and the Michigan State Bar may not have initiated disciplinary proceedings against Jaques or disciplined him does not affect the Eastern District's determination to initiate proceedings.

The second basis for Jaques's motion to dismiss is that he and his firm have not been properly served with process under Rule 4(c)(2). The court, however, determines that Rule 4(c)(2) does not apply to this proceeding under the Eastern District's local rules, and that Jaques and his firm have had sufficient notice of this disciplinary proceeding. Jaques and a corporate representative of his firm were served with the order to show cause by certified mail. On August 6, 1996, the court transmitted a copy of the order to Jaques's lawyers by facsimile and certified mail. Asserting the charges in the form of a "complaint" and serving it under Rule 4(c)(2) would not provide Jaques and his firm better due-process notice than what they have already received.

Order of Sept. 13, 1996. The Michigan State Bar proceeding against Respondent for violating an order to appear for trial and lying to two federal judges is still pending well over thirteen years after the incident. Respondent's Br. on Legal Standards at 20.

The court granted Respondent's Motion to Seal:

To protect the due process rights of Jaques and his firm, the court determines that sealing the records and proceedings in this case would be in the interest of justice. The serious nature of the disciplinary proceeding against Jaques and his firm require confidentiality. Until there is a final resolution of this disciplinary matter, confidentiality is necessary to prevent any unwarranted harm to the reputation of Jaques or his firm. This interest favoring nondisclosure outweighs the public's right of access to the judicial records of this proceeding. *See S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir.1993).

Order of Sept. 3, 1996.

On or about October 30, 1996, Respondent filed another petition for writ of mandamus in the Fifth Circuit Court of Appeals. In this petition, Respondent challenged the constitutionality of Local Rule 3 on due process grounds. In this court's opinion, there is nothing unconstitutional about Local Rule 3 on its face or in the way that it has been applied to Respondent. The show cause method of resolving attorney discipline matters is the standard method of proceeding. As a matter of fact, Local Rule 3 is strikingly similar to the Fifth Circuit's rules governing attorney suspension or disbarment. *Compare* Local Rule 3(d) *with* FED. R. APP. P. 46(b), (c); Fifth Circuit Local Rule 46; and Fifth Circuit Internal Operating Procedure–Disciplinary Action. *See also* U.S. Sup.Ct. Rule 8 (due process in disciplinary rule similar to Fifth Circuit's and Eastern District's rules). On November 4, 1996, the Fifth Circuit denied the Respondent's second petition for writ of mandamus. On January 6, 1997, Respondent filed a petition for a writ of certiorari in the Supreme Court of the Unit-

ed States. On April 28, 1997, the Supreme Court denied the petition. *In re Leonard C. Jaques,* —— U.S. ——, 117 S.Ct. 1552, 137 L.Ed.2d 701 (1997).

On or about October 28, 1996, Respondent filed another motion to dismiss. In this motion, Respondent makes the assertion that he has not had an opportunity to conduct discovery in this proceeding. Respondent's Am. Mot. to Dismiss at 3. This assertion is not true. The court has not prohibited discovery in this matter. In a conference call on August 29, 1996, the court stated that because the six instances of Jaques's conduct had already been the subject of judicial proceedings and findings, the court did not see the need to re-litigate those findings. The court, however, did not and has not prohibited discovery. *See* Hr'g Tr. of Aug. 29, 1996 at 2–3 ("If you believe that testimony is necessary, I'd be happy to hear from you as to what testimony you think would be relevant to the instances of conduct that I've cited in the order to show cause...."). The only exception is this court's Order of November 11, 1996, denying Respondent's Motion for Authorization to Issue Subpoena. In this motion, Respondent sought to subpoena Judge Samuel Kent of the United States District Court for the Southern District of Texas for the show cause hearing. The court denied Respondent's request because the request was (1) filed less than 48 hours before the show cause hearing and on a Sunday morning and (2) not necessary for this disciplinary proceeding.

On November 12, 1996, the court held the show cause hearing. At the hearing, the special counsel offered documentary evidence and the testimony of Respondent. Respondent offered documentary rebuttal evidence and the testimony of Professor Geoffrey Haz-

ard as an expert in the area of professional responsibility. Before the hearing, Respondent filed a Motion for Bifurcation of the Hearing because one of Respondent's experts on attorney discipline, Steven D. Peterson, was unexpectedly not available for the show cause hearing.[5] On January 21, 1997, the court stayed proceedings on Count 1 of the Second Amended Order to Show Cause pending the outcome of Respondent's criminal-assault trial in Michigan. On June 20, 1997, the Honorable Thomas Carlson of the Eastern District of Michigan signed a judgment that adjudged Respondent guilty of assault in violation of 18 U.S.C. § 113(a)(5). Pet'r Ex. No. 39. The court assessed punishment at a fine of $5,000 and community service. The community service will be (1) production of a video depicting "the autobiographical experience of Leonard Jaques himself" to persuade high school dropouts to go back to school and (2) personal readings by Jaques to handicapped children.

## II. DISCUSSION

### A. Standards Governing Discipline in the Eastern District

 Federal courts have the authority to promulgate local rules to govern the administration of judicial business. 28 U.S.C. § 2071(a); FED. R. CIV. P. 83(a)(1). Additionally, the Supreme Court has authorized federal courts to adopt local court rules that govern matters of detail such as attorney discipline.[6] *See Theard v. United States,* 354 U.S. 278, 281, 77 S.Ct. 1274, 1276, 1 L.Ed.2d 1342 (1957) (recognizing inherent power of district courts to promulgate and enforce rules concerning disbarment of attorneys). The Eastern District has adopted local rules that "govern the procedure in all civil and criminal actions in the United States District

---

5. Because of the personal matters set forth in Peterson's affidavit, the court seals Respondent's Motion for Bifurcation of Hearing and the attached affidavit. The seal shall remain in effect even after the court lifts the seal of all other matters in this proceeding.

6. A federal court has inherent power to suspend or disbar a lawyer from practice in its district. *In re Snyder,* 472 U.S. 634, 643, 105 S.Ct. 2874, 2880, 86 L.Ed.2d 504 (1985); *see also Resolution Trust Corp. v. Bright,* 6 F.3d 336, 340 (5th Cir.

1993) ("It is beyond dispute that a federal court may suspend or dismiss an attorney as an exercise of the court's inherent powers."). "This inherent power derives from the lawyer's role as an officer of the court which granted admission." *In re Snyder,* 472 U.S. at 643, 105 S.Ct. at 2880. In the present proceeding, it is unnecessary for the court to draw on its inherent power because the Local Rules are "up to the task." *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 50, 111 S.Ct. 2123, 2136, 115 L.Ed.2d 27 (1991).

Court for the Eastern District of Texas." Local Rule 1(a); *see* Pet'r Ex. No. 6 (Local Rules). "The standards of professional conduct adopted as part of the Rules Governing the State Bar of Texas shall serve as a guide governing the obligations and responsibilities of all attorneys appearing in this Court." Local Rule 3(a); *see* Pet'r Ex. No. 7 (Texas Rules). Members of the Eastern District's Bar are bound by the Texas Rules, and "attorney[s] practicing in this Court should be familiar with the duties and obligations imposed upon members of this Bar by the Texas Disciplinary Rules of Professional Conduct, court decisions, statutes, and the usages[,] customs[,] and practices of this Bar." Local Rule 3(a). Although the Eastern District uses State standards, the standards are imposed as a matter of federal law. *See In re Snyder,* 472 U.S. 634, 645 n. 6, 105 S.Ct. 2874, 2881 n. 6, 86 L.Ed.2d 504 (1985); *Resolution Trust Corp. v. Bright,* 6 F.3d 336, 341 (5th Cir.1993).

Eastern District of Texas Local Rule 3 governing attorney discipline and disbarment provides:

(a) Generally. The standards of professional conduct adopted as part of the Rules Governing the State Bar of Texas shall serve as a guide governing the obligations and responsibilities of all attorneys appearing in this Court. It is recognized, however, that no set of rules may be framed which will particularize all the duties of the attorney in the varying phases of litigation or in all the relations of professional life. Therefore, the attorney practicing in this Court should be familiar with the duties and obligations imposed upon members of this Bar by the Texas Disciplinary Rules of Professional Conduct, court decisions, statutes, and the usages[,] customs[,] and practices of this Bar.

\* \* \* \* \* \*

(d) Disciplinary Action Initiated in This Court.

(1) Grounds for Disciplinary Action. This court may, after the member has been given an opportunity to show cause to the contrary, take any appropriate disciplinary action against any member of its Bar:

(A) for conduct unbecoming a member of the Bar;

(B) for failure to comply with these local rules, the court's Civil Justice Expense and Delay Reduction Plan or any other rule or order of this court;

(C) for unethical behavior;

(D) for inability to conduct litigation properly....

Local Rules 3(a), (d)(1)(A)–(D).

The following section of the Texas Disciplinary Rules of Professional Conduct is applicable to this proceeding:

Rule 8.04 Misconduct

(a) A lawyer shall not:

\* \* \* \* \* \*

(2) commit a serious crime or commit any other criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(3) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

Texas Rules 8.04(a)(2), (a)(3).

The disciplinary rules in Texas also adopt a statute of limitations in a separate set of procedural rules for disciplinary matters:

No attorney licensed to practice law in Texas may be disciplined for Professional Misconduct occurring more than four years before the time when the allegation of Professional Misconduct is brought to the attention of the Office of Chief Disciplinary Counsel, except in cases in which disbarment or suspension is compulsory. Limitations will not begin to run where fraud or concealment is involved until such Professional Misconduct is discovered or should have been discovered in the exercise of reasonable diligence by the Complainant.

Texas Rule of Disciplinary Procedure 15.08. " 'Complainant' means the person, firm, corporation, or other entity initiating a Complaint or Inquiry." Id. at 1.06(E).

*B. Nature of Disciplinary Proceeding*

 Attorneys subject to discipline are "entitled to procedural due process, which includes fair notice of the charge." *In re*

*Ruffalo,* 390 U.S. 544, 550, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117 (1968). Disciplinary actions are "adversary proceedings of a quasi-criminal nature." *Id.* at 551, 88 S.Ct. at 1226. In a suspension or disbarment proceeding, the movant bears the burden of proving all elements of a violation by clear and convincing evidence. *In re Medrano,* 956 F.2d 101, 102 (5th Cir.1992). "Clear and convincing evidence" is:

> [T]hat weight of proof which "produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts" of the case.

*Id.* (citing *Cruzan by Cruzan v. Director, Missouri Dep't of Health,* 497 U.S. 261, 285 n. 11, 110 S.Ct. 2841, 2855 n. 11, 111 L.Ed.2d 224 (1990)). Even though the court has ordered Respondent to appear and show cause why he should not be disciplined, the special counsel bears the burden of proving all the elements of a violation. The court must make specific findings if it determines that Respondent violated disciplinary rules. *Bright,* 6 F.3d at 341. "[T]he court's disciplinary rules are to be read strictly, resolving any ambiguity in favor of the person charged." *In re Thalheim,* 853 F.2d 383, 388 (5th Cir.1988).

■ The Eastern District can rely on judicial findings of other courts in determining whether a member of the bar has violated the Local Rules. For example, if a member of a bar is convicted of a criminal offense, a federal district court can usually use that judicial finding and judgment of guilt as a basis for discipline. A federal district court does not have to conduct another trial on the underlying facts to determine if the member of the bar is guilty of a crime before assessing discipline. *See* Show Cause Hr'g Tr. of Nov. 12, 1996 at 205 (Professor Hazard testifying that courts ordinarily rely on criminal convictions, *e.g.,* tax fraud, as a basis for discipline). Attorney discipline would become practically impossible if courts were required to re-litigate the underlying facts of a prior judicial finding before imposing discipline. Before imposing discipline on a member of its bar, a federal court, of course should take judicial notice of the prior finding and make its own finding that the member has violated a local rule based on the judicial finding of another court.

### C. Respondent's Physical Assault (Count 1)

#### 1. Prior Judicial Findings

On June 13, 1996, the United States District Court for the Eastern District of Michigan sanctioned Jaques for physically assaulting opposing counsel in the courtroom during a recess in a trial. *Cook v. American Steamship Co.,* No. 91–CV–72412–DT (ED. Mich. June 13, 1996). Jaques represented the plaintiff in that case. After a day of trial, Jaques assaulted the defense lawyer after the defense lawyer took an exhibit from the hands of Jaques's expert. *Id.* at 17. Jaques admitted to offensively touching the defense lawyer by stating in his own witness statement to the Federal Protective Service that he "reached atop Emery's [the defense lawyer's] head and pulled his head back with the flat of my [Jaques's] left hand ..." *Id.* at 18. The court found that (1) Jaques acted without justification in assaulting the defense lawyer and (2) Jaques caused a mistrial to be declared. *Id.* at 18–20. The court further found that Jaques's misconduct had unreasonably and vexatiously multiplied the proceedings in the case. *Id.* at 20–21. The court assessed the excess costs, expenses, and attorneys' fees caused by Jaques's misconduct against Jaques pursuant to 28 U.S.C. § 1927. *Id.* at 21. On June 20, 1997, the Honorable Thomas Carlson of the Eastern District of Michigan signed a judgment that adjudged Respondent guilty of assault in violation of 18 U.S.C. § 113(a)(5). Pet'r Ex. No. 39.

#### 2. Specific Findings of Violations of Eastern District's Local Rules

By clear and convincing evidence, the court finds: On June 20, 1997, the Eastern District of Michigan adjudged Respondent guilty of assault in violation of 18 U.S.C. § 113(a)(5). The assault occurred on May 7, 1996. Pet'r Ex. No. 39.

Respondent's conduct violates two disciplinary rules: (1) Local Rule 3(d)(1)(A) (conduct unbecoming a member of the Bar) and (2) Texas Rule 8.04(a)(2) (a lawyer shall not commit a criminal act that reflects adversely on the lawyer's fitness as a lawyer). Concerning Local Rule 3(d)(1)(A), "conduct unbecoming a member of the Bar" means "conduct contrary to professional standards that shows an unfitness to discharge continuing obligations to clients or the courts, or conduct inimical to the administration of justice." *In re Snyder*, 472 U.S. at 645, 105 S.Ct. at 2881. Respondent's assault of another person was conduct unbecoming a member of the Eastern District's Bar because it clearly indicates Respondent's inability to discharge his duties as an officer of the court and as an advocate of his clients. Concerning Texas Rule 8.04(a)(2), Respondent's assault was a criminal act that reflects adversely on his fitness to practice in the Eastern District. " 'Fitness' denotes those qualities of physical, mental and psychological health that enable a person to discharge a lawyer's responsibilities to clients in conformity with the Texas Disciplinary Rules of Professional Conduct. Normally a lack of fitness is indicated most clearly by a persistent inability to discharge, or unreliability in carrying out, significant obligations." Texas Rules, "Terminology."

### D. Respondent's Abusive Behavior During Deposition (Count 2)

#### 1. Prior Judicial Findings

On May 21, 1996, this court sanctioned Jaques for abusive and disruptive behavior during his deposition. *Carroll v. Jaques*, 926 F.Supp. 1282, 1284 (E.D.Tex.1996), *aff'd*, 110 F.3d 290 (5th Cir.1997) (Pet'r Ex. No. 35). In this case, one of Jaques's former clients sued Jaques and his firm for fraud. *Id.* Counsel for the plaintiff conducted the deposition of Jaques. Over the course of the deposition, Jaques refused to answer questions and verbally abused counsel for plaintiff with profanity. *Id.* at 1285–87. After a show cause hearing on April 24, 1996, the court found that Jaques acted in bad faith by disrupting the litigation. *Id.* at 1289. Jaques "disrupted the litigation (1) by forcing

counsel for the Plaintiff to terminate the deposition and (2) by displaying blatant disrespect and contempt for the judicial processes of [the] court." *Id.* Drawing on its inherent power, the court sanctioned Jaques in the amount of $7,000. On April 26, 1996, Jaques paid his fine to the Clerk of the Court for the Eastern District of Texas. *Carroll v. Jaques*, No. 1:95–CV–87 (E.D. Tex. June 5, 1996). Eleven days later on May 7, 1996, Jaques committed an assault.

#### 2. Specific Findings of Violations of Eastern District's Local Rules

Initially, this court did not make findings on Respondent's abusive and disruptive behavior under a standard of clear and convincing evidence. Having presided over and thoroughly reviewed the record of the prior show-cause hearing in *Carroll v. Jaques*, however, the court hereby redetermines those findings under the clear and convincing evidence standard. Therefore, by clear and convincing evidence, the court specifically finds: At his deposition in *Carroll v. Jaques* taken on or about February 1, 1996, Respondent Jaques refused to answer questions and verbally abused counsel for Plaintiff with profanity. Among other profane language, Jaques called opposing counsel a "slimy son-of-a-bitch" and told him "F—— you, you son-of-a-bitch." In one instance in his deposition, Jaques appeared to threaten opposing counsel with physical violence when Jaques said: "He [opposing counsel] ought to be punched in the goddamn nose." Respondent acted in bad faith by disrupting the litigation. Respondent disrupted the litigation (1) by forcing counsel for the Plaintiff to terminate the deposition and (2) by displaying blatant disrespect and contempt for the judicial processes of the court. The court further adopts all other findings of its sanctions Order of May 21, 1996.

Respondent's conduct violates Local Rule 3(d)(1)(A) (conduct unbecoming a member of the Bar). Respondent's abusive and disruptive behavior was conduct unbecoming a member of the Eastern District's Bar because it clearly indicates Respondent's inability to discharge his duties as an officer of the court and an advocate of his clients. Re-

spondent cannot effectively represent clients in the Eastern District if he cannot control his temper and abide by the judicial processes of the court.

### E. Respondent's Failure to Comply with Court Orders

#### 1. Dismissal of Cases (Count 3)

##### a. Prior Judicial Findings

On May 2, 1996, the United States District Court for the Eastern District of Pennsylvania administratively dismissed without prejudice approximately 18,000 maritime cases pending in MDL 875 because Jaques failed to comply with the pretrial orders of the court. *In re Asbestos Products Liability Litigation (No. VI)*, 1996 WL 239863 (E.D.Pa. May 2, 1996). Jaques, other lawyers in his firm, and his Maritime Asbestosis Legal Clinic represented approximately 18,000 plaintiffs in MDL 875. To facilitate individual case evaluation and settlement, the court entered a pretrial order on July 18, 1995, requiring Jaques "to provide to defense counsel the necessary materials in 262 randomly selected cases in order that they could be evaluated for medical and exposure criteria and for settlement." *Id.* at *1. At a conference on August 18, 1995, plaintiffs' counsel advised the court that the required disclosure could be completed in thirty days. *Id.* Plaintiffs' counsel, however, failed to make the required disclosure. *Id.* at *2, *4.

The court made the following findings:

Plaintiffs' counsel has failed to comply with this Court's order of July 18, 1995.... Plaintiffs' counsel has not provided critical material necessary for defendants either to evaluate the cases so that a meaningful dialogue can take place or for the cases to be prepared for trial if that fails.... Plaintiffs' counsel has presented, as part of the discovery package, doctor's reports that state that a significant number of the plaintiffs have no asbestos related injury.... The statements made to the Court disclose that only a fraction of the recently diagnosed plaintiffs have an asbestos-related condition, and many of these may be open to question.... The Court believes that it is the responsibility of counsel to only file those cases which are ripe and ready to proceed. To file cases by the thousands and expect the Court to sort out the actionable claims is improper and a waste of the Court's time. Other victims suffer while the Court is clogged with such filings.

*Id.* at *4–*5. Based on these findings, the court ordered that approximately 18,000 cases be administratively dismissed without prejudice. *Id.* at *5. The court provided that cases could be individually reinstated if the plaintiff requesting reinstatement made an initial showing that he or she had an asbestos-related personal injury.[7] *Id.*

##### b. Specific Findings of Violations of Eastern District's Local Rules Not Practical

At the show cause hearing, the special counsel dropped this Count from the charge. Moreover, the presiding judge's order does not indicate what evidentiary standard was used when finding that Respondent failed to comply with court orders. Because it is unclear what standard was used, this court cannot rely on these prior judicial findings to make new findings under a standard of clear and convincing evidence. Accordingly, Respondent's failure to comply with court orders in MDL 875, as judicially determined, cannot provide a basis for discipline in this proceeding. Respondent's failure to comply with court orders could perhaps form the basis for discipline if the Eastern District had the judicial resources for a full hearing on the underlying facts and if the evidence showed by the clear and convincing evidence standard that Respondent violated disciplinary rules. The court, however, will not consider the conduct involved in this Count in determining an appropriate discipline for Respondent.

---

7. Jaques moved to reinstate some of the cases. *In re Asbestos Products Liability Litig.*, Civil Action No. 2, MDL 875 (E.D.Penn. Aug. 7, 1996). The court reinstated twenty-nine of the approximately 18,000 cases that were dismissed because Jaques provided satisfactory evidence that these plaintiffs actually suffered from an asbestos-related condition. *Id.*

### 2. Dismissal of a Case and Sanctions (Count 5)

#### a. Prior Judicial Findings

On January 6, 1995, the United States District Court for the Southern District of Texas dismissed one of Jaques's cases and assessed attorney's fees against Jaques for refusal to comply with discovery orders and "blatant forum shopping." *O'Neill v. A GWI Lines,* No. G–94–562, at 3–5 (S.D.Tex. Jan. 6, 1995) (Pet'r Ex. No. 14). Jaques filed a Jones Act case against forty-one defendants, claiming that the plaintiff suffered from hearing loss caused by work aboard ships. *Id.* at 1. The court found that, despite being specifically ordered by the court, Jaques failed to (1) amend the complaint with specific venue and jurisdictional allegations, (2) prepare and file a joint report for discovery and case management pursuant to Rule 26, and (3) appear at a Rule 16 scheduling conference. *Id.* at 3, 5. The court sanctioned Jaques by dismissing the case without prejudice and assessing attorney's fees against Jaques personally. *Id.* at 6, 8. The court noted:

> [Jaques's] failure to amend the Complaint or to participate in preparing a case management plan—not to mention his failure to appear before this Court, despite the fact that Defendants did appear—all evidence gross disregard for the judicial process. This Court simply will not allow itself to become the target of forum shopping because of its speedy trial record, particularly where a party makes no good-faith effort whatsoever to comply with either this Court's Orders, which are *absolutely* binding on parties, or engages in practices that evidence fundamental disrespect for this Court, the opposing party, and the judicial process as a whole.

*Id.* at 7–8 (emphasis in original).

The Fifth Circuit affirmed the district court's imposition of sanctions on Jaques under Rule 37(b)(2). *O'Neill v. AGWI Lines,* 74 F.3d 93, 96 (5th Cir.1996). The Fifth Circuit stated: "A review of the district court's order imposing sanctions indicates that Jaques either refused to comply with or completely ignored the district court's orders.... Jaques' blatant disregard of the district court's express orders is the type of conduct which Rule 37 sanctions were designed to address." *Id.* at 96. The Fifth Circuit also noted Jaques's failure to conduct litigation properly:

> Mr. Jaques is well known to this court. He operates the Jaques Admiralty Law Firm in Detroit, Michigan. Through telemarketing efforts he successfully attracts a high volume of clients for whom he files cases in admiralty. Unfortunately, Mr. Jaques seems to devote more attention to acquiring cases than processing them.

*Id.* at 95 n. 1.

#### b. Specific Findings of Violations of Eastern District's Local Rules Not Practical

The presiding judge's order does not indicate what evidentiary standard he used when finding that Respondent failed to comply with discovery orders and engaged in "blatant forum shopping." Because it is unclear what standard was used, this court cannot rely on those prior judicial findings to make new findings under a standard of clear and convincing evidence. Accordingly, Respondent's failure to comply with discovery orders and "blatant forum shopping," as judicially determined, cannot provide a basis for discipline in this proceeding. The court will not consider the conduct involved in this Count in determining an appropriate discipline for Respondent.

### F. Respondent's Fraud on a Client (Count 4)

#### 1. Prior Judicial Finding

On March 4, 1996, a judgment was entered against Jaques and his firm based on a jury finding that, by clear and convincing evidence, Jaques and his firm committed fraud on a client. *Carroll v. Jaques,* 927 F.Supp. 216, 219 (E.D.Tex.1996); *see also* Pet'r Ex. Nos. 12 judgment *in Carroll v. Jaques),* 13 (verdict in *Carroll v. Jaques* ). In its order denying Jaques's renewed motion for judgment as a matter of law, the court determined that the Plaintiff introduced legally sufficient evidence for a reasonable jury to find that Jaques and his firm committed fraud:

On November 9, 1984, a lawyer in The Jaques Admiralty Law Firm, P.C. sent a letter to Plaintiff that contained statements indicating that the Jaques firm continued to represent the Plaintiff. Pl.'s Ex. 841109. There was evidence at trial that the statements in the November 1984 letter were false. Although not appearing for any portion of the trial, Leonard Jaques repeatedly testified through video deposition that his firm ceased representing Plaintiff on April 5, 1984, the date of the Fifth Circuit's decision affirming Judge Parker's dismissal. Trial Tr. at 235–36. Among the evidence that connects Leonard Jaques personally to this fraud is his testimony (1) that he personally worked on Carroll's case (Trial Tr. at 234–35), (2) that he "caused" the November letter to be sent to Carroll, and (3) that it was his "policy" to send such a letter. Trial Tr. at 280. The foregoing evidence, along with evidence on the other elements of fraud, was legally sufficient for a reasonable jury to find that Leonard C. Jaques and The Jaques Admiralty Law Firm, P.C. committed fraud upon the Plaintiff.

*Carroll v. Jaques*, 927 F.Supp. at 220–21. The jury assessed damages against Jaques and his firm in the amount of $1,500,000 in actual damages and $3,500,000 in exemplary damages. *Id.* at 219. In this case tried under Michigan law, "exemplary damages" were not awarded to punish the defendant but rather to compensate the plaintiff for humiliation, sense of outrage, and indignity caused by the defendant. *Id.* at 222.

2. Specific Findings of Violations of Eastern District's Local Rules

By clear and convincing evidence, the court finds: Respondent committed fraud on one of his clients. Respondent's fraudulent conduct violates Texas Rule 8.04(a)(3) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation). Rule 15.08 of the Texas Rules of Disciplinary Procedure does not bar this finding because this court, as the "Complainant" under Rule 1.06(E) in this proceeding, did not learn about Respondent's misconduct until February 27, 1996 when the jury in *Carroll v. Jaques* determined that he committed fraud on a client. *Carroll v. Jaques*, 927 F.Supp. at 219.

After the show cause hearing, Respondent offered the "Request for Investigation" submitted by Carroll to the Michigan disciplinary authority in December 1990. *See* Respondent's Ex. O. Carroll indicates that he reported Respondent's conduct to the judge who presided over his case in the Eastern District of Texas. The Request for Investigation, however, does not indicate whether Carroll reported any conduct involving fraud to the presiding judge or whether the presiding judge actually received a report of misconduct. Thus, the Request for Investigation is insufficient to show that the Eastern District of Texas discovered or should have discovered Respondent's misconduct in December 1990.

G. *Respondent's Contempt of Court and Deceit (Count 6)*

1. Prior Judicial Finding

On May 6, 1985, the Sixth Circuit affirmed a district court's findings and decision to hold Jaques in civil contempt for knowingly violating an order to appear for trial and for lying to two federal judges regarding his whereabouts and reason for his failure to appear. *In re Jaques*, 761 F.2d 302, 304 (6th Cir. 1985); *Ahmed v. Reiss Steamship Co.*, 580 F.Supp. 737, 738–39 (N.D.Ohio 1984). The Sixth Circuit also noted Jaques's disrespect for legal process and the profession. *In re Jaques*, 761 F.2d at 306. The district court made its findings under the clear and convincing evidence standard. *In re Jaques*, 761 F.2d at 306; *Ahmed*, 580 F.Supp. at 745 ("It is clear that Jaques knew his representations were not accurate, and that his conduct exceeded reasonable limits in face of this Court's pressing trial calendar.").

2. Specific Findings of Violations of Eastern District's Local Rules are Barred

Respondent argues that Rule 15.08 of the Texas Rules of Disciplinary Procedure bars findings on this Count because this court, as the "Complainant" under Rule 1.06(E) in this proceeding, had constructive knowledge of Respondent's misconduct on February 23,

1984 when the United States District Court for the Northern District of Ohio found in a published opinion that Jaques had engaged in misconduct. *See Ahmed v. Reiss Steamship Co.*, 580 F.Supp. at 737, 738–39.[8] Because this court's Local Rule 3 refers to the Texas Disciplinary Rules of Professional Conduct and because the Texas Rules of Disciplinary Procedure affect the application of the Rules of Professional Conduct, the court resolves this statute of limitations argument in favor of Respondent. The court will not consider the conduct involved in this Count in determining an appropriate discipline for Respondent.

*H. Determination of Appropriate Discipline*

■ The purpose of this disciplinary proceeding is discipline, not punishment. The Eastern District has an obligation to regulate the conduct of the members of its Bar, to protect the public that it serves, and to protect the operation of the District's judicial processes. If a member of the Bar engages in conduct (wherever that may be) that indicates a potential of future harm to the public and the judicial processes of this court, the Eastern District must discipline the member. If a member of the Bar violates rules of professional conduct, those violations, as well as the particular facts and circumstances surrounding the violations, guide the court in determining the appropriate discipline.

■ Taking into consideration that, by clear and convincing evidence, Respondent violated Local Rules by (1) assaulting a person, (2) verbally abusing a lawyer during a deposition and disrupting the deposition, and (3) committing fraud on a client, the necessary discipline is suspension. Respondent's misconduct indicates that he does not have at this time the requisite professional character to discharge his duties to his clients and the United States District Court for the Eastern District of Texas. A lesser discipline than suspension is not appropriate under these unique circumstances. Respondent's misconduct has adversely affected most of the participants in the legal system—clients, fellow lawyers, and courts.

On September 3, 1996, the court determined that until there is a final resolution of this disciplinary matter, confidentiality is necessary to prevent any unwarranted harm to the reputation of Jaques or his firm. This interest favoring nondisclosure no longer outweighs the public's right of access to the judicial records of this proceeding. *See S.E.C. v. Van Waeyenberghe*, 990 F.2d at 848. The unsealing of these proceedings does not reveal any matters that have not already been made public. The Counts in the order to show cause are all contained in judicial decisions and records, which are open to the public. Respondent's petition for writ of certiorari to the Supreme Court is also open to the public. *In re Leonard C. Jaques,* —— U.S. ——, 117 S.Ct. 761, 136 L.Ed.2d 709 (1997) (denying Respondent Jaques's motion to seal petition and other pleadings); *see also In re Pels*, 1996 WL 788937, at *1 (D.C.Cir. Dec.26, 1996) (unsealing attorney disciplinary proceeding previously made public).

### III. CONCLUSION

Therefore, in accordance with Local Rule 3(d)(1), Respondent Leonard C. Jaques is hereby SUSPENDED from the Eastern District of Texas for a period of three years (one year for each Count).

Further, Respondent's Amended Motion to Dismiss or, Alternatively, The Judgment on the Pleadings is hereby GRANTED IN PART AND DENIED IN PART. The motion is GRANTED only with respect to Counts 5 and 6 in the Second Amended Order to Show Cause.

---

**8.** But for the Texas statute of limitations, this court could have found that Respondent's conduct was professional misconduct. Because the district court that held Respondent in civil contempt used the clear and convincing evidence standard, this court could have relied on that court's findings in this proceeding. And, by clear and convincing evidence, this court could have found: Respondent knowingly violated an order to appear for trial and knowingly lied to two federal judges regarding his whereabouts and reason for his failure to appear. Respondent's conduct would have violated two disciplinary rules: (1) Local Rule 3(d)(1)(A), (conduct unbecoming a member of the Bar) and (2) Texas Rule 3.03(a)(1) (a lawyer shall not knowingly make a false statement of material fact to a tribunal).

Further, Respondent's Motion for Summary Judgment is hereby GRANTED IN PART AND DENIED IN PART. The motion is GRANTED only with respect to Counts 5 and 6 in the Second Amended Order to Show Cause.

Further, the seal of these proceedings is hereby LIFTED except with respect to Respondent's Motion for Bifurcation of Hearing and the attached affidavit.